Ivie CLAY, a Minor,
Petitioner–Appellant,

v.

**DIRECTOR, JUVENILE DIVISION, DE-PARTMENT OF CORRECTIONS,**
Respondent–Appellee.

No. 79–2414.

United States Court of Appeals,
Seventh Circuit.

Argued May 30, 1980.

Decided Oct. 1, 1980.

---

518

Ill.Rev.Stat., ch. 38, § 12–2. She was subsequently adjudicated a delinquent and was committed to the custody of the respondent until she reached the age of twenty–one. She is currently on parole.

Petitioner has advanced several grounds for relief and we will treat specifically the following: (1) her admission to the charge was an involuntary guilty plea, first, because she was unaware of available defenses, and second, the admission was induced by her belief that an agreement had been reached as to disposition, an agreement which was either not kept, was misrepresented to her, or was misunderstood by her; (2) she received ineffective assistance of counsel at the admission hearing; (3) she received ineffective assistance of counsel in the presentation of her motion to vacate the guilty plea; and (4) her due process rights under the Fourteenth Amendment were violated by the denial of her motion to vacate the guilty admission although the state trial court had represented to her that she would have an absolute right to vacate the plea if the sentence was not in accordance with the agreement that had been made.

II.

A. *Voluntariness of the Guilty Plea*

 It is well settled that because a plea of guilty absolutely waives the constitutional protections which insulate the accused and stands as an admission that petitioner has violated the law, it accords with due process only if voluntarily and intelligently given. *United States ex rel. Healey v. Cannon,* 553 F.2d 1052, 1056 (7th Cir. 1977), *cert. denied,* 434 U.S. 874, 98 S.Ct. 221, 54 L.Ed.2d 153. Further, it must be "the culmination of a rational decision–making process, in which the accused assesses the numerous factors which bear upon his choice of whether to formally admit his guilt or put the State to its proof. The plea must represent the informed, self–determined choice of the defendant among practicable alternatives." *Id.* Although the Fourteenth Amendment does not re-

Richard Corruthers, Law Student, for petitioner–appellant.

Anita Donath, Asst. Atty. Gen., Chicago, for respondent–appellee.

Before FAIRCHILD, Chief Judge, PELL, Circuit Judge, and CAMPBELL, Senior District Judge.*

PELL, Circuit Judge.

I.

This is an appeal pursuant to 28 U.S.C. § 2253 (1976) from the district court's judgment of dismissal on respondent's motion for summary judgment of a petition for a writ of habeas corpus. On September 28, 1977, Ivie Clay, a minor, admitted to a charge of aggravated assault, as defined in

* William J. Campbell, Senior Judge of the Northern District of Illinois, is sitting by designation.

quire that a juvenile hearing conform with all the requirements of a criminal trial, the due process clause dictates that the proceeding comport with the "essentials of due process and fair treatment." *See In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); *In re Gault,* 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967). We note, and the parties do not contend otherwise, that the issue of the voluntariness of an admission of guilt is within the ambit of constitutional protections which must be accorded to juveniles. Here, it would appear that if petitioner's contentions are in fact true, she is entitled to habeas relief.

While *Brady v. United States,* 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970), establishes that a guilty plea is ordinarily deemed to be the result of an informed decision–making process if entered upon the advice of competent counsel, the record of petitioner's admission hearing strongly supports her claim that she was not aware of available defenses. The facts, as petitioner related them to the court, are as follows:

THE COURT: Tell me in your own words exactly what happened that makes you think you are guilty of the charges in the Petition? What did you do?

IVIE CLAY: Well, I know I was wrong for pulling the knife on him.

THE COURT: Who did you pull a knife on?

IVIE CLAY: This boy Josie that's all I know his name.

THE COURT: Why would you go around pulling knives on people?

IVIE CLAY: I can tell you how it started, we are living in a condemned building, and they done set fire to the building 5 times already. The Puerto Ricans bust out the windows and everything else. My mother went down there and boarded the first floor up to keep them out of there and so he was outside this time, and they was playing ball by the side of the building and this ball went in there. He was climbing through the window. We got dogs up in there. I ask him "Why you climbing through the window?" He said, "My ball went in there." "What color is your ball because I'll go in there and get it. If you go in there, those dogs will bit you." "I don't need you to go in there and get nothing." "Get out the window. Since you got smart. You ain't going to get ya ball." He is going to swing on me. If he don't remove himself, I was going to remove him myself.

THE COURT: Whose house is it?

IVIE CLAY: This is my house, and he lives all the way down on the other block.

THE COURT: He was coming in the window?

IVIE CLAY: Yes he was going in the window.

\* \* \* \* \* \*

MR. FRIEDMAN (Counsel for Ivie Clay): Did you at that point get a knife?

IVIE CLAY: I had went upstairs. Yes, I got the knife.

MR. FRIEDMAN: Did you bring it downstairs with you?

IVIE CLAY: At first when I got the knife, I looked out the window. He was still hanging in the window and I told him "You ain't gonna move?" He said, "No." And he seen the knife in my hand. So, I closed the window and I went through the back and went down the steps and at the time I got there, he was going through the window going back outside and I told him if I catch him in there again I was going to cut him with that knife, and they was throwing rocks, a lot of his Puerto Rican friends was so, I called the police. And they came up there and they said I had a gun but I didn't have no gun.

Ivie Clay has never deviated from this version of the facts, and the record of the admission hearing contains no testimony or statements by the State's attorney to the contrary. Moreover, her petition alleges that at her initial interview with Saul Friedman, the assistant public defender appointed to represent her, she advised him that she had threatened to strike the complainant, one Jose Garcia, with a knife, only in self–defense and in defense of her family

and property because he had just threatened her life, had kicked her, and was threatening to set fire to her house, an act he had attempted in the past. Notwithstanding the fact that petitioner would appear to have had grounds to assert the defenses of self–defense and defense of dwelling, as defined in Ill.Rev.Stat., ch. 38, §§ 7–1 and 7–2, her counsel failed either to argue these defenses on petitioner's behalf or to advise petitioner that asserting the defense of self–defense was an alternative available to her. Thus, petitioner alleges that at the time of her admission, she was not aware that she had any option other than to plead guilty to the charges against her.

The State has not controverted petitioner's version of the facts, but has rather argued that her counsel, in the exercise of his best professional judgment, might well have concluded that these defenses were not available. This contention, with respect to the self–defense defense, is based on the fact that even if the complainant had kicked Ivie Clay, she became the aggressor at the time she obtained a knife and threatened him as he was exiting the premises. The State concedes, however, that petitioner was alone in the ground floor area and that a gang, of which the complainant was a member, was assembled outside the window and was throwing rocks. While the district court will, on remand, be able to develop these facts more fully, it appears on the record before us that the requirements for assertion of a self–defense defense were met. *See People v. Brumbeloe,* 97 Ill. App.2d 370, 240 N.E.2d 150 (1st Dist. 1968). With respect to the defense of dwelling defense, the State has argued that petitioner's dwelling was not the area in which the confrontation took place, but rather was in the apartment above. We note only that a threat to set fire to one area generally will have some effect on the remainder of the structure.

■ We think that it is significant that the affidavit filed by petitioner's counsel in no way contradicts Ivie Clay's allegations as to her lack of awareness of alternatives to admission. It therefore does not appear on the record, at least insofar as it is currently developed, that petitioner's plea was knowingly or intelligently entered.

With respect to the voluntariness of the plea, the petition alleges that Ivie Clay's admission was induced by petitioner's belief that if she waived her right to a trial by jury, an agreement had been made to recommend at most a sentence of probation. The affidavits filed by the State's attorney and petitioner's former counsel contradict this assertion and attest that the only agreement reached in conjunction with the case was to amend the complaint to read that the weapon used was a knife rather than a gun. In *Blackledge v. Allison,* 431 U.S. 63, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977), the Court noted the importance of balancing the need to accord a substantial measure of finality to guilty pleas and the concommitant plea bargain, against the right of a prisoner, including one in custody after pleading guilty, to safeguard his or her "freedom from detention in violation of constitutional guarantees." *Id.* at 72, 97 S.Ct. at 1628. In *Blackledge,* the Court held that the petition for a writ of habeas corpus should not have been summarily dismissed where it was alleged that a promise had been made to the petitioner regarding the sentence that would be imposed, the promise had been broken, and the petitioner had been instructed by his attorney as to his answer to the court's questions.

> Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible. . . . What *Machibroda* [*v. United States,* 368 U.S. 487, 82 S.Ct. 510, 7 L.Ed.2d 473,] and *Fontaine* [*v. United States,* 411 U.S. 213, 93 S.Ct. 1461, 36 L.Ed.2d 169,] indisputably teach, however, is that the barrier of the plea or sentencing proceeding record, although imposing, is not invariably insurmountable. In administering the writ of habeas corpus and its § 2255 counterpart, the federal courts cannot fairly adopt a *per se*

rule excluding all possibility that a defendant's representations at the time his guilty plea was accepted were so much the product of such factors as misunderstanding, duress, or misrepresentations by others as to make the guilty plea a constitutionally inadequate basis for imprisonment.

*Id.* at 74–75, 97 S.Ct. at 1629–30 (citations and footnotes omitted). Noting that the petitioner's allegations in *Blackledge* were not vague or conclusory, the Court concluded that they, even when viewed against the record of the plea hearing, were not so "palpably incredible" or "so patently frivolous or false," as to warrant summary dismissal. *Id.* at 76, 97 S.Ct. at 1630.

In the present case, we are not faced with an instance where the allegations in the petition are in clear contradiction of statements made by the petitioner in the record, but rather with a record which provides a degree of support for petitioner's contentions. While it is true that Ivie Clay answered most of the court's questions as to the voluntariness of the plea in the rote manner often characteristic of such proceedings, the transcript also contains the following colloquy:

> THE COURT: Are you entering an admission to this Delinquency Petition because of an agreement reached by you and your attorney with the State's Attorney?
>
> IVIE CLAY: I don't understand what you are saying. What you mean?
>
> THE COURT: The question is, are you entering into an admission—you are admitting that you committed the act as charged in the Petition because of an agreement with your attorney and the State's Attorney?
>
> IVIE CLAY: Yes Your Honor.
>
> THE COURT: Do you understand that the Court can refuse to accept the agreement and enter any order which the Court considers proper including commitment to the Department of Corrections until you reach the age of 21 years?
>
> IVIE CLAY: Yes Your Honor.

> THE COURT: But in such event, you would have the absolute right to withdraw your admission of a hearing before another Judge and that your statements hear [sic] today or any evidence obtained as a direct result of your statement hear [sic] today could not be used against you. You understand that?
>
> IVIE CLAY: Yes Your Honor.

■ That petitioner frankly stated that she was pleading guilty because of a plea agreement is, of course, inconclusive on whether she understood the terms of the agreement. The public defender and the State's attorney attested, and the district court found on the basis of their affidavits, that the only agreement made was to amend the complaint to change the weapon from a gun to a knife; yet the State concedes that this alteration was of no particular benefit to the petitioner. Moreover, the need for the amendment was occasioned by nothing more than a clerical error. All parties are in agreement that the weapon used was in fact a knife. While we do not intend to suggest that the particular State's attorney and public defender intentionally misrepresented the nature of the agreement in their affidavits, recognizing as we do that the Juvenile Division of the Circuit Court of Cook County handles a staggering number of cases on any given day, without the benefit of a hearing at which the credibility of witnesses may be judged, we cannot view petitioner's allegations as "palpably incredible." Common sense dictates that any defendant, and particularly one with seemingly valid defenses available, would scarcely be inclined to enter an admission of guilt in return for an agreement by the State to do nothing more than amend the complaint to comport with the undisputed facts of the case, particularly a fact of no significance on the matter of guilt of aggravated assault.

*B. Ineffective Assistance of Counsel*

■ As we have noted in our discussion of the voluntariness of the guilty admission, *supra*, petitioner was not advised of the availability of the defenses of self–defense

or defense of dwelling. The standard of representation guaranteed to a criminal defendant is that level which "meets a minimum standard of professional representation," *United States ex rel. Williams v. Twomey*, 510 F.2d 634, 641 (7th Cir. 1975), *cert. denied*, 423 U.S. 876, 96 S.Ct. 148, 46 L.Ed.2d 109, "within the range of competence demanded of attorneys in criminal cases." *McMann v. Richardson*, 397 U.S. 759, 771, 90 S.Ct. 1441, 1449, 25 L.Ed.2d 763 (1970). As this court has noted in the past, "[m]uch depends on the nature of the charge, the evidence known to be available to the prosecution, of the evidence susceptible of being produced at once or later by the defense, and of the experience and capacity of the defense counsel." *United States ex rel. Williams v. Twomey, supra,* at 639. While we apply a presumption that petitioner's counsel at the admission proceeding was conscious of his duties to his client and sought to discharge them, *see, e. g., Matthews v. United States*, 518 F.2d 1245 (7th Cir. 1975), we think that petitioner's allegations that her counsel failed to advise her of the defenses in question raise some question as to the adequacy of representation, particularly as the allegations were not contradicted by counsel's affidavit. In any event, issues are presented which are best resolved through a hearing process.

With respect to petitioner's claim that she received ineffective assistance of counsel in moving to vacate the guilty admission, we note first that the motion filed in petitioner's behalf was timely filed. As to the content of the motion, however, the motion appears to be a standard printed form with petitioner's name merely being filled in. A copy of the motion is included in an appendix to this opinion. The petitioner is referred to throughout as a male, and only broad, general grounds for vacating the guilty plea, some of which are applicable and some of which are not, are alleged. Most significant is the fact that the motion makes no reference whatsoever to the trial judge's statement to petitioner that she would have the absolute right to vacate the guilty plea if the court refused to accept

the plea agreement. While an issue of fact exists as to the precise scope of the agreement, it would appear that this statement should at least have been referred to in presenting the motion. Even more serious, in our view, is the fact that when the motion was argued, it was by an attorney who had never met petitioner, and who was, by every inference we can draw from the record, totally unfamiliar with the case:

THE COURT: What's this about, Ivey [sic] Clay? This is for argument according to this, on motion to vacate order of 10–26.

MR. HARRIS: Your Honor, I believe it's here on either a appeal check or—

THE COURT: I think Harris knows about this, I believe that—

MR. HARRIS: You mean, Wright.

THE COURT: Excuse me. Ask him about it and then you can handle it.

MR. HARRIS: I'll go ahead with the—

MS. GEER: Your Honor, the matter of Ivey [sic] Clay, 77 J 8657, it's a motion for the Court, by the respondent to withdraw the admission and vacate the finding of delinquency.

Your Honor, I will stand on the motion as it is presented before the Court.

THE COURT: There's no further argument, motion to withdraw the admission, and what was the rest of it?

MR. HARRIS: Vacate the finding of delinquency.

THE COURT: Sheet 1, line 19, motion Respondent to withdraw admission and vacate finding of 10–26 denied.

MR. HARRIS: Your Honor, I would then present to the Court a order to bring Ivey [sic] Clay back to this court.

He may discuss this matter with the attorney as to any further procedure he wishes to take.

THE COURT: Now, I'm not familiar with that either. What are you saying, you say bring it back so you can discuss it with the attorney?

I don't know if you can bring people back, you can go out there.

MR. HARRIS: Well, the boy is at Saint Charles.

THE COURT: The Public Defender can go to Saint Charles.

And unless that's a practice here or something, to bring people back for them to discuss the case with the lawyer, which I would be most surprised, if that's true.

Then you'll have to go out there. No reason why you can't go out there to prepare the case.

MR. HARRIS: Very well, judge.

■ The State has argued that any infirmities in the level of advocacy petitioner received in conjunction with the motion to vacate were somehow cured by the fact that petitioner retained present counsel seven days before the expiration of the period allowed for appealing the denial of the motion. We do not agree. Under Illinois law, a motion to vacate a guilty plea is addressed to the discretion of the trial court, and an appellate court may not reverse the denial of the motion except upon a showing of an abuse of discretion. *People v. Walston*, 38 Ill.2d 39, 230 N.E.2d 233 (1967). Given the general grounds in the motion, and the fact that no argument was presented in the trial court, there would have been no basis on which the appellate court could have reversed. For the same reason, we reject the State's contention that the failure to take an appeal was a deliberate bypass of state remedies, which constituted a waiver for purposes of federal habeas relief.

■ The State argues, however, that there would have been grounds for the appellate court to reverse the trial court because of the failure of counsel to comply with Rule 604(d) of the Illinois Supreme Court Rules, Ill.Rev.Stat. ch. 110A, § 604(d) (1977), which requires among other things, that the defendant's attorney "file with the trial court a certificate stating that the attorney has consulted with the defendant either by mail or in person to ascertain his contentions of error in the entry of the plea of guilty." We note that this issue was raised for the first time at oral argument by the State, and hence we may treat it as waived. *See United States v. White*, 454 F.2d 435, 439 (7th Cir. 1971), *cert. denied*, 406 U.S. 962, 92 S.Ct. 2070, 32 L.Ed.2d 350 (1972). Even were we to consider the question, however, we note that in *In re Buchanan*, 62 Ill.App.3d 463, 19 Ill.Dec. 607, 379 N.E.2d 122 (1st Dist. 1978), the court held Rule 604(d) inapplicable to juvenile proceedings. We therefore do not view petitioner's failure to appeal as a deliberate bypass of state remedies. Further, there is no question as to exhaustion in this case, because the State concedes that there is no post–conviction relief available to juveniles. *See Fay v. Noia*, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963); *United States ex rel. Williams v. Brantley*, 502 F.2d 1383, 1386–87 (7th Cir. 1974). We therefore remand to the district court for a hearing on the effective assistance of counsel issues.

## C. *Due Process*

The final issue raised by petitioner relates to her claim that the trial judge violated her right to due process of law by denying the motion to vacate the guilty plea after representing to her that she would have an absolute right to vacate the plea if the sentence was not in accordance with the agreement that had been made. The district court's determination that this claim had no merit was based upon its finding that the only agreement that had been made related to the nature of the weapon. Because we have held that a hearing must be held to determine the true nature of the agreement or at least of petitioner's understanding of the agreement insofar as her lack of understanding may have vitiated her admission of guilt, the due process issue should likewise be considered on a remand.

Accordingly, the judgment of the district court is reversed and the cause is remanded for further proceedings consistent with this opinion, Circuit Rule 18 to be applicable.

REVERSED AND REMANDED.

**524**

## APPENDIX*

STATE OF ILLINOIS)
 ) SS
COUNTY OF COOK )

IN THE CIRCUIT COURT OF COOK COUNTY
JUVENILE DIVISION

IN THE INTEREST OF )
*Clay, Ivie* ) . Petition No. *77 J 8657*
 )
 A MINOR. )

\* The italics indicate those portions of the form Motion which were inserted in handwritten script by counsel.

## MOTION TO WITHDRAW ADMISSION AND VACATE FINDING OF DELINQUENCY

NOW COMES the minor respondent, *Ivie Clay,* by his attorney, JAMES J. DOHERTY, Public Defender of Cook County, by *Saul Friedman,* Assistant Public Defender and moves this Honorable Court to vacate the finding of delinquency heretofore entered and for reasons states as follows:

1. That on *September 28, 1977,* the minor respondent entered an admission to the offense of *Agg. Assault* in the above–entitled cause.

2. That at the dispositional hearing held on *October 26, 1977,* the Court committed the minor respondent to the Department of Corrections.

3. That on the _____ day of _____, 19___, the minor respondent indicated his request to file a notice of appeal in the instant cause and pursuant to Supreme Court Rule 604(d), files this motion to withdraw his plea of guilty and vacate the finding of delinquency.

4. That the minor respondent did not fully comprehend the significance of his admission.

5. That the minor respondent was not admonished in his admission, in that there was no affirmative showing that the court informed the minor respondent and determined that said minor understood:

(a) the nature of the charge

(b) the penalties the minor may be subjected to upon his admission to the offense, including committment [sic] to the Department of Corrections until the age of twenty–one

(c) that the minor respondent has a right not to enter an admission or to persist in that admission if it has already been made

(d) if the minor respondent enters an admission there will not be a trial of any kind and that by so admitting the offense he waives the right to a trial and the right to be confronted with the witnesses against him.

6. That the minor respondent now urges that his admission was induced by coercion of the police and/or their agents, by the use of force, threats or promises.

7. That the minor respondent now urges that his admission was induced by the use of illegally obtained evidence.

8. That the court failed to determine first when accepting the minor's admission whether there was an agreement and if there was said agreement said court failed to inquire as to the terms of this agreement.

9. The court failed to determine a factual basis for the admission when it entered a final judgment on the minor respondent's admission.

10. The court failed to admonish the minor respondent in accordance with the provisions of Supreme Court Rule 605.

WHEREFORE, the minor respondent prays that this Honorable Court grant his motion to withdraw the admission and vacate the finding of delinquency.

 RESPECTFULLY SUBMITTED,
 JAMES J. DOHERTY
 Public Defender of Cook County

By *Saul H. Friedman*