THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
RUSSELL KELLY, Defendant-Appellant.

First District (2nd Division)    No. 78-1202

Opinion filed September 30, 1980.

James J. Doherty, Public Defender, of Chicago (John Lanahan, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Kathleen Warnick, and Susan Ruscitti Grussel, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE HARTMAN delivered the opinion of the court:

Defendant was charged by information with armed robbery under section 18—2 of the Criminal Code of 1961 (Ill. Rev. Stat. 1975, ch. 38, par. 18—2). Following a jury trial he was convicted of the lesser included offense of robbery and was sentenced to a term of 6 years in the penitentiary. His appeal raises as issues whether he was proved guilty beyond a reasonable doubt and whether the trial court abused its discretion in responding to a question tendered to it by the jury. For the following reasons, we affirm.

The State's evidence revealed that on August 11, 1977, at 3 a.m. one James Campana, employed by the Belmont Hotel, was sitting at a desk located behind a counter on the first floor working on books. He felt something being sprayed into his face and observed defendant and another identified as Allen Tinsley, in front of him. Tinsley was spraying a substance from a canister into his face while jumping over the counter, and defendant was standing right next to him. One of the men announced that it was a robbery. While defendant restrained Campana, Tinsley went to the money drawer under the counter. After his assailants left, Campana went into the back room and telephoned the police; he then checked the money drawer and found $54 missing. When the police arrived he went outside to meet them and observed defendant, Tinsley and two others being placed in a squadrol. He observed scratch marks on the lock of the hotel doors which had not previously been there.

Pursuant to a radio report of an armed robbery in progress at the Belmont Hotel, two officers in a squadrol arrived at that location at 3:05 to 3:07 a.m., one standing at the front door while the other went around to the side. When the latter shouted that "they're getting away," the first one picked up his partner in the squadrol and gave chase to a 1970 maroon Chevrolet automobile containing four occupants, including defendant and Tinsley, which had left the scene at a high rate of speed. Curbing the vehicle at Belmont and Cambridge, police ordered the occupants out of the car and placed them in a squadrol. Fifty-four dollars in cash was found in the car. Defendant and the others were then returned to the

Belmont Hotel, where Campana identified defendant and Tinsley as the two men who robbed him. After being given *Miranda* warnings, Tinsley informed the police that he had thrown the canister in the grass. It was later found and placed in evidence as People's Exhibit No. 1.

Investigator Gary Baranowski testified that on August 11, 1977, at about 3:30 a.m. he talked with defendant, whom he identified in court, and Tinsley. After receiving *Miranda* warnings, defendant told Baranowski that he and another entered the Belmont Hotel and approached the desk clerk. While his accomplice sprayed Mace into the clerk's face, jumping over the counter at the same time, defendant assisted by jumping over the counter and holding the victim while the other took money out of the cash register, whereupon both fled from the hotel.

Defendant testified on his own behalf that on August 11, 1977, at 2:30 a.m., after playing pool with William Klee and Larry McKeown at Bensinger's Pool Room at Clark and Diversey, they met Tinsley, an "acquaintance" whom defendant had seen about twenty times during the last four or five months. Tinsley asked Klee to drive him to a friend's apartment in the Belmont Hotel, so that he could pick up some clothes. Defendant, Tinsley, McKeown and Klee, in a 1970 Chevrolet, drove to the hotel where Klee parked the car westbound in an alley. Tinsley asked defendant to go with him to help in carrying the clothes. Defendant and Tinsley entered the hotel through the front door, which Tinsley opened. Defendant was not sure how he opened it but believed he used a key.

Tinsley started running towards the desk, defendant stated, and he also walked towards the desk to see what was happening. He observed Tinsley spraying something from a canister into the victim's face. During this time defendant remained standing on the outside of the desk. He heard Tinsley say it was a "stick-up" and saw him knock the desk clerk to the floor. Defendant then left through the side door and went straight to the car. He told Klee that Tinsley was robbing the hotel, and that he wanted him to drive away at once. Klee argued about leaving without Tinsley, who then came running around the corner and jumped into the car. Tinsley told Klee what he had done and that they should leave. Defendant was sitting in the front seat. They drove westbound on Belmont Avenue until they were curbed by the police and ordered out of the car at Cambridge Street.

Defendant testified that one of the policemen, Officer Alex Horstein, walked up to him and said, "now I got you." He had been arrested for attempt burglary by that officer in March of 1977 and was placed on probation. After that proceeding defendant saw Horstein on the street and when defendant told him he was on probation, Horstein told defendant not to give him a reason to arrest him or he would put him in the penitentiary.

Defendant denied making any statement to police regarding the incident at the Belmont Hotel.

Defendant's motion for a directed verdict was denied and the jury found defendant guilty of the lesser included offense of robbery. While presentence investigation was being discussed, defendant was held in contempt for vulgar language directed at the court and jury and sentenced to 5 months and 29 days for contempt. Defendant's motion for a new trial was denied, and he was sentenced as first noted above.

■■ Defendant claims that the State failed to establish his guilt beyond a reasonable doubt, focusing on the evidence of his inculpatory statements to Investigator Baranowski and James Campana's testimony regarding his involvement in the crime. He posits a reasonable doubt that the statements were ever made, pointing to testimony of Officer Richard Simon, one of the arresting officers, at the preliminary hearing held five days after the occurrence, that defendant "refused to make a statement." The question to which Officer Simon was responding, however, was whether defendant had made any statement "to him"; the explanation of his response given by Simon at trial emphasized he had meant only that defendant had made no statement to him personally. He also relies on Investigator Baranowski's failure to testify at that hearing, where evidence that defendant made a confession to him would have been probative of probable cause, suggesting that the investigator was attesting to a manufactured story at trial. Defendant also assigns Baranowski's initial confusion as to defendant's identity at the hearing on the motion to suppress as an additional reason supporting his thesis. There is no evidence supporting defendant's imputation of false witness to Baranowski except his own uncorroborated testimony; even accepting it *arguendo*, it fails to account for why the same testimony could not as easily have been given at the preliminary hearing as at the suppression hearing or at trial, or why the ostensibly manufactured confession evidence could not have been tailored to allow one of the officers present at the earlier hearing to offer it. The jury had the responsibility to determine the weight and credibility of confession evidence (*People v. Bernette* (1970), 45 Ill. 2d 227, 236, 258 N.E.2d 793), and to resolve conflicts in the evidence (*People v. Dee* (1975), 26 Ill. App. 3d 691, 703, 325 N.E.2d 336). Baranowski's initial failure to recognize defendant visually nine months after his initial contact with him does not cast such doubt upon his substantive testimony as to preclude reliance thereon by the fact finder.

Defendant argues James Campana's trial testimony that defendant restrained him during the robbery was directly contradicted by his testimony at the preliminary hearing, when he had said "[defendant] didn't do anything or say anything." The latter statement was made in response to a question which, by defense counsel's own quotation of it at trial, was

addressed to what defendant was doing "during the time [he was] being sprayed by the other individual [Tinsley]." Campana emphasized on redirect examination that it was "at the beginning" defendant was inactive. Any contradiction in Campana's respective accounts of defendant's involvement was therefore partial and equivocal at most. His trial testimony that defendant subdued him while Tinsley took the money was corroborated by Investigator Baranowski, who stated defendant confessed to doing exactly that. The infirmities urged by defendant in the relevant evidence of both witnesses are insufficient to render it a nullity.

■■ Defendant suggests that mere presence at the scene of a crime does not make a person accountable for the criminal acts of another (*People v. Banks* (1975), 28 Ill. App. 3d 784, 785, 329 N.E.2d 504); however, proof of a common design can be drawn from the circumstances surrounding commission of the act (*People v. Gray* (1980), 87 Ill. App. 3d 142, 408 N.E.2d 1150; *People v. Mertens* (1979), 77 Ill. App. 3d 791, 396 N.E.2d 595). Even disregarding the evidence of defendant's active restraint of Campana, the jury could have inferred his participation in the crime from the character of his presence and other attendant circumstances, including his affiliation with Tinsley and the others in the group (*People v. Morgan* (1977), 67 Ill. 2d 1, 8, 364 N.E.2d 56, *cert. denied* (1977), 434 U.S. 927, 54 L. Ed. 2d 287, 98 S. Ct. 411; *People v. Crutcher* (1979), 72 Ill. App. 3d 239, 243, 390 N.E.2d 571; *People v. Cole* (1977), 50 Ill. App. 3d 133, 142, 365 N.E.2d 133). We find no basis for reversal on this ground.

Defendant's second argument is that the trial court abused its discretion in responding to the following question submitted by the jury during its deliberations:

> "Some of us believe there was a significant discrepancy in the testimony of the victim. Some believe he did not place Mr. Kelly behind the counter a few days after the occurrence. But, said he was behind the counter several months later. Others believed you ruled no inconsistancies [*sic*] * * *. Does this mean the victim claimed Mr. Kelly was behind the counter at the first hearing and at this trial and it is, as I understand * * *."

Mention in that question of a ruling that there were "no inconsistencies" apparently referred to an *in camera* determination during the trial that a certain "question sought to be posed was not inconsistent"; there was, therefore, no ruling on a point of law of which the jury needed to be apprised. Acknowledging the trial court correctly determined it could not answer the jury's question directly without encroaching on their role as fact finder, defendant avers nevertheless that, by failing to instruct the jury that inconsistencies in the testimony were for them to determine and that any prior ruling by the court was not relevant to their deliberations, the court allowed them to make one of at least three "impermissible inferences": that

it refused to answer the question because there were no inconsistencies in Campana's testimony; that it had ruled on the facts but simply refused to tell the jury what its ruling was; or that the question posed was irrelevant to defendant's guilt or innocence. Thus, he concludes, the jury's initial confusion evident in the question was aggravated as to the "crucial factual area" of defendant's involvement in the crime as reflected in Campana's trial and prior testimony.

■■ The perimeters of the trial court's authority in responding to inquiries from the jury were traced by our supreme court in *People v. Queen* (1974), 56 Ill. 2d 560, 565, 310 N.E.2d 166, which held that it was within the trial court's discretion to allow or refuse a jury's request for a review of testimony. Error occurs when a trial court refuses to exercise discretion in the erroneous belief that it has no discretion as to the question presented. *(People ex rel. Chesapeake & Ohio Ry. Co. v. Donovan* (1964), 30 Ill. 2d 178, 195 N.E.2d 634.) The trial court remarked to counsel that "the jury is seeking answers which calls [*sic*] for facts which the court is not called upon to decide but rather it is in the province of the jury; that the court feels that a response should be given to the jury * * *," and observed "that there is no transcript available of the testimony that was adduced." In response to the jury's question, the court gave the following answer in writing: "The court has carefully considered your request for information set forth in your question and does refuse the request * * *. Kindly continue with your deliberations." Defendant objected to this answer. Defendant maintains the trial court's remarks suggest a belief that it could not give the jury any guidance, even as to matters properly the subject of instruction. Our reading of the trial court's comments is otherwise. The court simply revealed that it felt precluded only from resolving a factual issue. Insofar as the information requested by the jury involved such an action, the court could not in any event have erred by supposing it had no discretion to provide it. *People v. Williams* (1975), 60 Ill. 2d 1, 12-13, 322 N.E.2d 819.

■■ The kernel of defendant's argument appears to be, however, that irrespective of what it felt to be within its discretion the court was required to provide the jury with supplementary instruction that did not answer the question posed directly but dispelled any confusion evinced by it. In *People v. Callahan* (1974), 16 Ill. App. 3d 1006, 1007, 307 N.E.2d 188, the defendant assigned error to the trial court's failure to respond to irrelevant jury questions because "they indicated confusion and an instruction should have been given to clear up their confusion." No abuse of discretion or reversible error was found to have occurred where the jury was simply reminded that they had already heard all the pertinent evidence and received instruction in the applicable law. In the case at bar no such reminder accompanied the court's refusal to answer the question, but the jurors had already been instructed at length that they were to be the sole

judges of the credibility of the witnesses and the weight to be accorded their testimony, and that "[e]vidence that on some former occasion a witness made a statement inconsistent with his testimony in this case may be considered by you in deciding the weight to be given to the testimony * * *." Defendant's position in this respect must therefore necessarily be that it was error for the trial court not to reiterate instruction that had already been given; while such a course of action might have been helpful to the jury, it was not an abuse of discretion to simply refuse to answer an improper question and direct them to continue their deliberations. In *People v. Briggman* (1974), 21 Ill. App. 3d 747, 750, 316 N.E.2d 121, relied upon by defendant, the jury requested a review of a crucial part of the testimony, not, as here, the resolution of a factual inconsistency, and the court replied that " 'there is no answer to the question.' " We find *Briggman* inapposite to the instant circumstances.

In light of the foregoing considerations, defendant's conviction by the jury cannot be disturbed and is affirmed.

Affirmed.

STAMOS and DOWNING, JJ., concur.