THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* WILLIAM HOPSON, Defendant-Appellant.

Second District    No. 81-82

Opinion filed November 12, 1981.

Charmaine Tellefsen, of Tellefsen and Learn, of Glen Ellyn, for appellant.

J. Michael Fitzsimmons, State's Attorney, of Wheaton (Barbara A. Preiner, Assistant State's Attorney, of counsel), for the People.

Mr. JUSTICE REINHARD delivered the opinion of the court:

Defendant, William Hopson, entered a plea of guilty pursuant to a negotiated plea agreement with the State's Attorney. Defendant later filed a motion to withdraw his plea. After a hearing, the court denied the motion. Defendant now appeals and alleges that the trial court erred in denying his motion to withdraw his guilty plea and that he was denied the effective assistance of counsel on that motion.

On June 14, 1979, defendant was charged in a five-count indictment with the offense of murder. (Ill. Rev. Stat. 1979, ch. 38, par. 9—1.) On December 6, 1979, at a conference held pursuant to Supreme Court Rule 402 (Ill. Rev. Stat. 1979, ch. 110A, par. 402) and prior to the court's acceptance of defendant's guilty plea, the assistant State's Attorney related that the defendant's guilty plea was to be entered pursuant to a plea agreement whereby defendant agreed to testify in the prosecution of two co-defendants in cases which arose from the same incident. In return for the defendant's testimony, the State agreed to recommend that defendant receive 20 years in the Illinois Department of Corrections. The court then concurred in the plea agreement. Immediately thereafter, the defendant entered a plea of guilty to murder as alleged in count I. Ill. Rev. Stat. 1979, ch. 38, par. 9—1(a)(1).

The court then informed the defendant of the charges against him as follows:

> "Now, the nature of the charge is that on or about May 21, 1979, in DuPage County, you committed the offense of murder in that, without lawful justification and with intent to kill Scott Brunoehler, you strangled Scott Brunoehler, thereby causing the death of Scott Brunoehler * * *."

In response to the question of whether he understood the charges, the defendant said, "Yes. I do." The court then admonished the defendant pursuant to Supreme Court Rule 402, and the assistant State's Attorney articulated the factual basis for the guilty plea as follows.

On May 21, 1979, the body of Scott R. Brunoehler, an inmate at the Du Page County jail, was discovered hanging from a light fixture in the jail. The defendant was also incarcerated in the jail at the time of Brunoehler's death. Investigation by the Du Page County sheriff's office revealed that Brunoehler's death was caused by defendant and two other inmates, James Devin and Robert Gangestead.

The defendant's participation in the crime involved holding down the victim's feet while one of the other individuals held down his arms and

the third individual strangled the victim with a rope. The defendant and Robert Gangestead then held up the victim's body while James Devin tied the rope around a padlock, apparently suspended from the ceiling, "in such a manner as to make it appear as if the offense had been a suicide * * *."

On May 24, 1979, defendant gave a full confession to Detectives Tanke and Glinski of the Du Page County Sheriff's Office. In the confession, Hopson indicated that James Devin told him that there was going to be a "blanket party." Defendant observed James Devin take out a rope which had been braided from bed sheets and make the statement "[s]nitches don't live." The defendant made similar confessions to Detective Allen McKechnie, assistant State's Attorneys Charles Emery and Robert Anderson on May 25, 1979, and to Deputy Robert Quinn of the sheriff's office on May 30, 1979.

After the assistant State's Attorney articulated the factual basis for the plea the following colloquy ensued:

"MR. ANDERSON: I believe that the defendant has indicated that he is pleading guilty because he did so participate.

Is that correct, Mr. Hopson?

DEFENDANT HOPSON : I'm sorry, Yes.

THE COURT: Are those the facts that the State's evidence would show, Mr. Hopson?

DEFENDANT HOPSON: Yes."

The court then accepted defendant's plea of guilty and set the date for the sentencing hearing.

At the sentencing hearing on May 1, 1980, the State nolle prossed counts II through V in the indictment and recommended a sentence of 20 years in the Department of Corrections. In response to a question from the court, the defendant stated:

"I just—from what I—I've already talked to the State's Attorney, and they've explained pretty much what is happening and all the questions have been answered so far.

I just was wondering if the Court could reduce the charge, but I've been informed that you could not. That's the only question I had."

The court then sentenced defendant to 20 years in the Department of Corrections.

Thereafter, defendant filed a motion to vacate the plea of guilty on May 30, 1980, and new counsel was appointed to represent him. In an amended motion to vacate the plea the defendant alleged:

"6. That there was not substantial compliance with said Supreme Court Rule 402, Chapter 110A, Illinois Revised Statutes. In that, the

court did not properly inform him of the nature of the charges pending against him as the Defendant was not advised that intent was an element of the crime that he was pleading guilty to.

7. That the record of the plea of guilty does not state a proper factual basis upon which to base a plea of guilty to the crime of murder.

8. That your Petitioner maintained and continues to maintain that he never intended to murder the victim herein."

At the hearing on the motion to withdraw the guilty plea, defendant Hopson testified that on December 6, 1979, the day the plea was entered, he was given the drugs adapin and tranxene by Deputy Quinn prior to being brought to court. Hopson stated that he had met with attorney William (*sic*) Zimmerman three or four times prior to the entry of the guilty plea and that at no time did Zimmerman explain the elements of the offense of murder or explain the element of intent. Hopson could not remember the events of the day the guilty plea was entered because his attention was diverted elsewhere. He testified that as the State's Attorney was relating the factual basis for the guilty plea, his lawyer was informing him that his wife had left for Florida with his son. Finally, when asked if he understood from his conversations with Zimmerman, the State's Attorney, and the Judge, that the offense of murder involved the element of intent, Hopson replied, "I, I presumed it, but he never explained it to me."

On cross-examination, Hopson stated that his lawyer gave him the impression that if he didn't plead guilty, he would receive the death penalty. The defendant also indicated that he could not recall other portions of the proceedings concerning the guilty plea because "when he told me I was going to get 20 years, I was in a state of shock." Hopson further testified that the drugs adapin and tranxene were administered to him to calm him down. The drugs were supposed to be administered at different times, but, defendant stated, on December 6, both drugs were administered at the same time by Deputy Quinn.

On redirect examination, defendant testified that he responded, "I'm sorry, [y]es" to the State's Attorney's question at the December 6, 1979, hearing regarding defendant's participation in the crime because he did not hear what was said. He also stated that, in his opinion, the drugs he had taken on December 6 impaired his ability to think. Lastly, Hopson testified that had he known that the State would have to prove that he intended to kill the victim, he would not have pleaded guilty.

The State then called David Disharoon, who is employed as a senior medical officer for the Du Page County sheriff's department. Disharoon is responsible for the administration of medication to the residents of the Du Page County jail. A record of defendant Hopson's physical examination indicated that he was receiving one tablet of 22.5 milligrams of

tranxene and one tablet of 30 milligrams of dalmene daily. Disharoon classified these drugs as mild tranquilizers. Disharoon stated that, in his opinion, people taking these types of medication do not have any particular difficulty understanding what is happening around them, and they are able to understand questions asked them. On cross-examination, Disharoon testified that although the two drugs are never administered together, if they were, "you would not be totally confused, but you would be very sleepy and you would probably sleep."

Arthur H. Zimmerman, defendant's lawyer who represented him during the entry of the guilty plea, testified that he had spoken with Hopson seven or eight times prior to the entry of the guilty plea and that they discussed the matter of the guilty plea and the possibility of defenses on those occasions. On December 6, 1979, prior to the time the plea was entered, the two discussed the plea one final time and whether it would be more prudent for Hopson to defend the matter. Zimmerman and Hopson discussed using the defense of compulsion and whether the State's Attorney's office would accept a plea of manslaughter. On that day, Zimmerman could not notice any marked difference in Hopson's manner. Hopson was competent and understood what was said to him. During Hopson's contacts with Zimmerman, Hopson never related that he wanted to withdraw his plea of guilty.

On cross-examination, Zimmerman stated that Hopson during a part of the time was not paying full attention to the proceeding during the entry of the guilty plea because he was asking Zimmerman about his marital situation and child custody. Zimmerman indicated that he did not discuss in specificity the element of intent with Hopson but that Hopson had frequently told him that he did not intend to kill anyone.

Robert Anderson, the assistant State's Attorney who had been assigned to prosecute Hopson, was then called by the State. Anderson had conversed with Hopson on December 6, 1979, just prior to the entry of the guilty plea. Anderson testified that Hopson seemed fully aware of what was occurring and was competent to enter the guilty plea.

Defendant was granted leave to amend the motion to vacate to conform to the evidence that he had ingested some drugs prior to coming to court on December 6, 1979. After hearing arguments from both sides, the court denied defendant's motion to vacate his guilty plea.

Defendant's first contention on appeal is that the trial court erred in refusing to vacate his plea of guilty because the factual basis for the plea contained in the record was inadequate to support the charge of murder.

Supreme Court Rule 402(c) requires that the trial court first determine the factual basis of a guilty plea before it enters final judgment on the plea. (Ill. Rev. Stat. 1979, ch. 110A, par. 402(c).) A factual basis for a plea of guilty may be established in a number of ways. The prosecuting

attorney may summarize the testimony he would present; the facts in the case may be stated by witnesses; or, the facts of the case may be determined from an examination of the presentence report. (*People v. Lumley* (1979), 76 Ill. App. 3d 221, 223, 394 N.E.2d 1079.) In the present case, the assistant State's Attorney recited a factual basis for the plea as set forth above and related the substance of a confession by the defendant given on several occasions. At the conclusion of this recitation, defendant's attorney stipulated to and defendant acknowledged the truth of the facts asserted.

■■ However, defendant asserts that the facts read into the record do not conform to the charge contained in count I of the indictment. Count I alleges that William Hopson "without lawful justification and with the intent to kill Scott Brunoehler strangled Scott Brunoehler thereby causing the death of Scott Brunoehler at a time when Scott Brunoehler was an inmate in the DuPage County Jail." The factual basis as read into the record by the assistant State's Attorney demonstrated that defendant's involvement in the crime consisted of holding the victim's feet down while James Devin strangled the victim. The fact that defendant was not the one who actually strangled the victim is not significant. The factual basis clearly exhibits that defendant would be guilty of the offense of murder pursuant to a theory of accountability. Section 5—2 of the Criminal Code of 1961 provides that a person is accountable for the conduct of another when "[e]ither before or during the commission of an offense, and with the intent to promote or facilitate such commission, he solicits, aids, abets, agrees or attempts to aid, such other person in the planning or commission of the offense." (Ill. Rev. Stat. 1979, ch. 38, par. 5—2(c).) The defendant was properly charged in count I of the indictment since it is well established that a person who commits an offense under accountability principles can be charged and tried under an indictment for the substantive offense. *People v. Buffington* (1977), 51 Ill. App. 3d 899, 902, 366 N.E.2d 1099.

■■ ■ Defendant further contends, however, that the facts fall short of establishing his guilt on a theory of accountability since, to be accountable for the acts of another, the defendant must have the concurrent specific intent to promote or facilitate the commission of the offense. (*People v. Sakalas* (1980), 85 Ill. App. 3d 59, 68, 405 N.E.2d 1121.) Defendant asserts that, although the factual basis indicates that he held the victim's feet down, the record does not establish that he was aware that he was facilitating the murder of the victim, and thus, he lacked the necessary, specific intent. This assertion is not borne out by the record. The record indicates that just prior to the victim's murder, James Devin told defendant that there was going to be a "blanket party" and that "snitches don't live."

Also, the record indicates that, once it became apparent to defendant that a murder was taking place, defendant did not attempt to prevent the commission of the offense or retract his actions in any way. In fact, after the murder, defendant helped the other inmates in hanging the body from the ceiling of the jail in an attempt to make it appear as if the death was caused by suicide. Although mere presence at the scene of a crime does not make a person accountable for the criminal acts of another, proof of a common design can be drawn from the circumstances surrounding commission of the act. (*People v. Kelly* (1980), 89 Ill. App. 3d 400, 404, 411 N.E.2d 1012.) We need not decide whether this evidence would have been sufficient to prove that defendant had the requisite intent if the case had gone to trial. It is clear that the quantum of proof necessary to determine if there is a factual basis for the plea is less than that necessary to sustain a conviction after a full trial. (*People v. Nyberg* (1976), 64 Ill. 2d 210, 215, 356 N.E.2d 80, *cert. denied* (1977), 430 U.S. 970, 52 L. Ed. 2d 362, 97 S. Ct. 1654.) Accordingly, we find that the factual basis for defendant's plea of guilty was clearly sufficient.

■■ Defendant next asserts that his motion to withdraw his plea should have been allowed since it was not made voluntarily. Defendant contends that he did not understand the nature of the charge with regard to the requirement of the element of intent for the offense of murder. He further argues that his attorney never explained the indictment to him; that the attorney never explained the elements of the crime to him, particularly that of intent; and that he continually maintained to his attorney that he did not intend to kill anyone. At the time the plea of guilty was entered by the defendant, the court informed the defendant of the nature of the charge against him by stating that defendant was charged with committing the offense of murder "without lawful justification and with intent to kill * * *." When asked if he understood the nature of the charge against him, defendant responded, "Yes. I do." Supreme Court Rule 402(a) has been interpreted to require the trial judge to inform the defendant of the nature of the charge and ascertain whether the defendant understands it prior to accepting a plea of guilty. (*People v. Robinson* (1976), 63 Ill. 2d 141, 145, 345 N.E.2d 465.) From our review of the record, we are satisfied that the trial judge complied with the requirements of Rule 402.

Defendant, however, cites *Henderson v. Morgan* (1976), 426 U.S. 637, 49 L. Ed. 2d 108, 96 S. Ct. 2253, in support of his contention that his misapprehension of law rendered his plea involuntary. In *Henderson*, the defendant was charged with first-degree murder. He later pleaded guilty to the charge of second-degree murder in the State trial court without having been informed by the court of the necessary element of intent to kill. After exhausting his State remedies, defendant filed a writ of *habeas*

*corpus* in a Federal district court alleging that his guilty plea was involuntary because he was unaware that intent to kill was a necessary element of second-degree murder. On *certiorari* to the United States Supreme Court, the court held that defendant's conviction was entered without due process since he did not receive adequate notice of the offense, and hence, his plea was involuntary.

However, we view the recent Illinois Supreme Court case of *People v. Barker* (1980), 83 Ill. 2d 319, 415 N.E.2d 404, as being more relevant. In *Barker,* defendant pleaded guilty in the trial court to two counts of attempted murder. The defendant's plea was entered pursuant to an agreement with the State whereby the State agreed to nolle pros the other counts in the indictment along with several other unrelated offenses. It was also agreed that defendant would not receive a sentence of more than 20 years. At the hearing, the defendant was not informed that intent to kill was a necessary element of the offense. The defendant then agreed in substance with the factual basis of the plea as stated by the State's Attorney. Later, at the sentencing hearing, defendant stated, "I never had no intentions of taking no one's life." The court then imposed a sentence of 20 years. The defendant later filed a motion to withdraw his guilty plea and the trial court denied it. The defendant alleged in the supreme court, among other things, that his pleas were not voluntary since the trial judge failed to admonish him that intent to kill was an essential element of attempted murder.

The supreme court rejected this argument and held that the trial judge's admonishments to the defendant were sufficient and that defendant had failed to establish a basis for withdrawal of his guilty plea. In reaching this conclusion, the court noted that the indictments adequately alleged the element of intent, the indictments were read to the defendant before his guilty pleas were accepted, the defendant had received copies of the indictments prior to the hearing, and the defendant indicated at the hearing that he had no question about "what the charge is or what it means." The court stated that the record satisfactorily showed that the defendant was informed of the nature of the charges, including the requirement of the specific intent to commit murder, and that he understood the nature of the charges. (83 Ill. 2d 319, 330, 415 N.E.2d 404.) The court then distinguished *Henderson v. Morgan* in the following manner:

> "A significant difference between our case and *Henderson* is found in the fact that no formal charge of second-degree murder was ever made against the defendant in *Henderson.* He had originally been charged with first-degree murder, a crime which requires a different mental state than second-degree murder.
> * * *

In our case, unlike in *Henderson*, the indictment informed the defendant that he was charged with performing certain acts with the intent to commit murder. Since he was charged with having the requisite mental state, as the court stated in *Henderson*, this element of the offense could be proved by the objective evidence that the defendant fired the shotgun in the direction of the officers. From the evidence summarized in the statement of the factual basis, a jury could find the defendant guilty of attempted murder regardless of his protestations that he did not intend to kill anyone when he fired the gun. We therefore do not agree with the defendant's contention that his statement made at the sentencing hearing negated the requisite mental state or that it put the court on notice of his misapprehension of the law so as to render his pleas involuntary." 83 Ill. 2d 319, 331-32, 415 N.E.2d 404, 409-10.

*Henderson v. Morgan* is inapplicable to the present case for the same reasons. The indictment charged the defendant with committing the act with the intent to kill. Unlike *Henderson*, the defendant did not plead guilty to a crime with which he was never charged. Also, much the same procedure that was followed in *Barker* was followed in the present case. Defendant acknowledged that he had received a copy of the indictment prior to the hearing, and the indictment alleged that defendant acted with "intent to kill Scott Brunoehler." The trial judge informed defendant of the charge against him, including the fact that defendant had acted with the intent to kill, and defendant acknowledged that he understood.

■■ Supreme Court Rule 402 does not require the court to explain to the defendant separately each of the elements of the offense. It requires that he be informed of "the nature of the charge." (Ill. Rev. Stat. 1979, ch. 110A, par. 402(a)(1).) There is sufficient compliance with the Rule if an ordinary person in the circumstances of the defendant would understand what the charges are. (*People v. Bennett* (1980), 82 Ill. App. 3d 596, 599-600, 403 N.E.2d 50.) A guilty plea is not rendered involuntary by the failure to inform the defendant expressly that the charged offense requires proof of specific intent. *People v. Cosey* (1978), 66 Ill. App. 3d 670, 672-75, 384 N.E.2d 95.

■■■ Next, defendant contends that his plea was involuntary because his mental state was altered due to the ingestion of certain drugs. Deputy David Disharoon testified that the drugs that defendant had been receiving would not cause a person to have any particular difficulty in understanding what is happening around him. Defendant's suggestion that his incoherence was caused by ingesting two different drugs at the same time was contradicted by Disharoon's testimony that tranxene and dalmene were never administered together at the jail, and, if they were,

they would not cause the person to become confused but merely sleepy. Also, both Arthur Zimmerman and assistant State's Attorney Robert Anderson testified that defendant was competent and understood the proceedings on December 6, 1979. Allowing the withdrawal of a guilty plea is, under Rule 604(d), a matter for the trial court's discretion. (*People v. Hale* (1980), 82 Ill. 2d 172, 175-76, 411 N.E.2d 867.) We do not find an abuse of discretion in the trial court's rejection of this contention.

Defendant's next arguments on appeal, *i.e.*, that his plea should be vacated because of his lawyer's statement that if defendant didn't plead guilty he would receive the death penalty and because he was not paying full attention to the proceedings on December 6 because of his preoccupation with his marital difficulties, are not properly before this court. These issues were not raised in the defendant's motions to withdraw and could be deemed as waived. (*People v. Adkisson* (1980), 83 Ill. 2d 1, 7-8, 413 N.E.2d 1238.) Supreme Court Rule 604(d) provides in pertinent part:

> "Upon appeal any issue not raised by the defendant in the motion to withdraw the plea of guilty and vacate the judgment shall be deemed waived." (Ill. Rev. Stat. 1979, ch. 110A, par. 604(d); see also *People v. Bennett* (1980), 82 Ill. App. 3d 596, 599, 403 N.E.2d 50.)

Even if these issues were not waived by defendant's failure to include them in the motion to withdraw, the record indicates that defendant's counsel denied telling him that if he didn't plead guilty he would get the death penalty. Also, the evidence was disputed as to defendant's attentiveness at the time the plea of guilty was entered. Both of these contentions appear to have been considered and rejected by the trial judge. From our review of the record, we cannot say that this conclusion was an abuse of discretion.

■■ Defendant next contends that he was denied effective assistance of counsel in the proceedings on his motion to vacate his guilty plea. Defendant first cites his counsel's failure to file a certificate in compliance with Supreme Court Rule 604(d). (Ill. Rev. Stat. 1979, ch. 110A, par. 604(d).) Rule 604(d) provides in relevant part:

> "The defendant's attorney shall file with the trial court a certificate stating that the attorney has consulted with the defendant either by mail or in person to ascertain his contentions of error in the entry of the plea of guilty, has examined the trial court file and report of proceedings of the plea of guilty, and has made any amendments to the motion necessary for adequate presentation of any defects in those proceedings." (Ill. Rev. Stat. 1979, ch. 110A, par. 604(d).)

Although we do not approve of counsel's failure to file the certificate, Illinois courts have held that strict compliance with the filing provision of 604(d) is not necessary where the record reveals that counsel has per-

formed all the functions required by the Rule. (*People v. Lange* (1978), 59 Ill. App. 3d 603, 605, 375 N.E.2d 919; *People v. Thompson* (1978), 57 Ill. App. 3d 100, 101, 372 N.E.2d 1105.) In such a case, the failure to file the certificate will be viewed as harmless error. (*Lange*, at 605; *Thompson*, at 101.) We believe that this is the case here. The record shows that a transcript of the December 6, 1979, plea of guilty was filed on May 2, 1980. A motion to vacate the plea of guilty was filed on May 30, 1980, and an amended motion to vacate the plea of guilty was filed on August 14, 1980, which alleged that defendant lacked the requisite intent and that he was unaware that intent was an element of the crime. The amended motion also alleged an inadequate factual basis. At the hearing on this motion, defendant's counsel ably questioned witnesses with regard to the defendant's intent, his ingestion of drugs, and his state of mind at the time of the entry of the guilty plea. Defendant's counsel was then granted leave to amend the motion to reflect the fact that defendant had ingested drugs on December 6, 1979, prior to the time of the entry of the guilty plea. Further, it appears from our examination of the record of this hearing that defendant's counsel had examined the court file and report of proceedings of the plea of guilty. We find it evident from the record that defendant's attorney consulted with the defendant personally to ascertain his contentions of error in the entry of the plea of guilty, that the attorney examined the court file and report of proceedings of the plea of guilty and that he made amendments necessary for adequate presentation of any defects in those proceedings. Also, as in *People v. Lange*, the defendant was advised by the court in strict compliance with Supreme Court Rule 402. (*People v. Lange* (1978), 59 Ill. App. 3d 603, 605, 375 N.E.2d 919.) Under these facts counsel's failure to file the certificate as required by Supreme Court Rule 604(d) was harmless error.

The defendant also argues that he was denied effective assistance of counsel on the motion to withdraw the plea of guilty by his counsel's failure to present allegations at that hearing on the inadequate representation of defendant by the counsel representing him at the time he entered his plea of guilty.

■■ Our independent review of the record discloses no evidence of actual incompetence of either of defendant's previous counsel which produced substantial prejudice to defendant and without which the result of the hearing on defendant's motion to vacate would have been different. (*People v. Greer* (1980), 79 Ill. 2d 103, 120-21, 402 N.E.2d 203; *People v. Scott* (1981), 94 Ill. App. 3d 159, 418 N.E.2d 805.) We therefore hold that defendant was not denied the effective assistance of counsel on his motion to vacate his guilty plea.

From a careful review of the record, we find nothing to show that the trial court erred in denying the motion to withdraw the guilty plea or that the ends of justice would be better served by submitting the case to trial.

576

Accordingly, the judgment of the circuit court of Du Page County is affirmed.

Affirmed.

NASH and LINDBERG, JJ., concur.