THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
FRANK ALLEN BENNETT, Defendant-Appellant.

Fifth District   No. 79-83

Opinion filed March 27, 1980.

John H. Reid and Jeff M. Plesko, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Walden E. Morris, State's Attorney, of Harrisburg (Martin N. Ashley and William S. Zale, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mme JUSTICE SPOMER delivered the opinion of the court:

Defendant appeals from denial of his motion to withdraw his guilty plea, entered on the charge of murder, for which he was sentenced to 30 years' imprisonment. He further appeals from dismissal of his post-conviction petition, based on the same charge, which has been consolidated with his direct appeal.

Defendant was charged by information with the March 15, 1978, murder of his wife. A competency hearing was held on April 14, 1978, and following the testimony of a court-appointed psychologist, the defendant was found fit to stand trial. At the preliminary hearing on May 9, 1978, probable cause was found. Two days later, defendant requested and received a hearing, at which he pleaded guilty to the murder charge.

At the May 11 hearing, defendant's counsel informed the court that his guilty plea was against counsel's advice, but that defendant had insisted. The court then admonished defendant that he was charged with murder, read the information to him, and advised him of possible penalties. When defendant persisted in his plea, the State's Attorney provided a factual basis for the plea.

The State's Attorney advised the court that, if the case were to go to trial, Glen Amberger, an Eldorado policeman, would testify that on March 15, 1978, he received a call reporting a disturbance at an apartment in Eldorado. When Amberger opened the door of the apartment, defendant handed him a .410-gauge shotgun and told the officer, "I killed the goddamned whore." Amberger thereupon placed defendant under arrest.

Marlin Nelson, an occupant of the apartment, would testify that defendant entered his apartment and, addressing Roseanna Bennett,

defendant's wife, stated, "I am going to kill you." He then shot Roseanna in the head, reloaded the shotgun and shot her prone body a second time. Mrs. Marlin Nelson and Shirley Kilmer, who were also present, would testify to the same facts.

The State's Attorney further asserted that Jack Nolen, a detective for the Illinois Division of Investigation, would testify that after *Miranda* warnings were given, defendant made a voluntary statement. According to defendant's statement, on March 14, defendant's wife failed to pick him up at his place of employment in Kentucky as they had agreed. After several hours of searching, he found his wife at her aunt's home in Eldorado at about 3 p.m. the next day. She refused to go home with him, so he proceeded to the residence of Ed O'Neal in Junction, Illinois, where he borrowed a .410-gauge shotgun and two shells. From there he drove to Eldorado, about 15 miles, and found his wife at the house of Shirley Kilmer. His wife then fled from the Kilmer house to the apartment of Marlin Nelson, to which he pursued her and shot her twice, with intent to kill her.

Finally, the State's Attorney asserted that Dr. Warren Dammers, coroner's physician, would testify that the cause of Roseanna Bennett's death was gunshot wounds of the head and neck. Defense counsel stipulated as to the witnesses' testimony, and the defendant agreed that the factual basis was substantially correct.

The court then advised defendant of his right to a preliminary hearing, to a jury trial, to be prosecuted only on the information, to be confronted by witnesses against him, of his privilege against self-incrimination, and of his right to present evidence in his own behalf. Defendant waived his right of confrontation, and asserted that he understood the charges against him. He affirmed that his guilty plea was voluntary and a result of his own decision, and that he "voluntarily, knowingly and understandingly" waived his rights. The court then accepted his guilty plea.

On June 21, 1978, defendant filed a motion to withdraw his guilty plea. At the hearing on the motion, defendant asserted that he pleaded guilty because he had been nervous, and he "didn't quite understand what was going on." His nervousness arose from the fact that he had never been in jail before. He claimed that, while his counsel had advised him of possible defenses or lesser offenses, he "didn't quite understand them." He also contended that members of his family had urged him to plead guilty, so he could "get it over with."

On cross-examination, defendant admitted that he was just as nervous at the hearing to withdraw the guilty plea as he had been when he entered the plea. He admitted that the plea had not been coerced, and that his attorney had talked to him for 15 or 20 minutes about the

consequences of his plea. Included in the discussion was counsel's recommendation that he not plead guilty, because "he said I would maybe get off with manslaughter or something like that."

Defendant's motion to withdraw his plea was denied, and on June 29, 1978, defendant was sentenced to 30 years' imprisonment. The following day defendant renewed his motion to withdraw, it was again denied, and notice of appeal was filed.

On October 2, 1978, defendant filed a *pro se* post-conviction petition, and counsel was appointed. At a hearing on December 13, 1978, defendant's petition was dismissed on the prosecutor's motion, from which dismissal defendant also appeals.

On direct appeal, defendant contends that his motion to withdraw should have been granted for the following reasons: (1) he was not properly admonished of the nature of the charge against him; (2) he was not advised of the possibility that he could be convicted of some lesser included offense; (3) he was not advised that he had the right to persist in the plea of not guilty, and (4) his guilty plea was not entered knowingly and voluntarily, but was the result of pressure from his family and his inability to understand the proceedings.

■■ None of the defendant's contentions of inadequate admonishment by the trial court were raised in his motions to withdraw his guilty pleas; rather, the motions dealt entirely with allegations regarding his mental and emotional state at the time of the plea.

Supreme Court Rule 604(d) (Ill. Rev. Stat. 1977, ch. 110A, par. 604(d)) provides, *inter alia*:

> "Upon appeal any issue not raised by the defendant in the motion to withdraw the plea of guilty and vacate the judgment shall be deemed waived."

Defendant's claimed violations of Supreme Court Rule 402 (a)(1) (Ill. Rev. Stat. 1977, ch. 110A, par. 402 (a)(1)) were therefore not properly perfected for appeal.

■■ Furthermore, when considered on the merits, it is clear that the trial court substantially complied with Rule 402. Defendant first claims that he was not advised of the nature of the charge against him. However, there need be only substantial, not literal, compliance with Rule 402(a)(1), and the entire record may be considered in determining whether or not there was an understanding by the accused of the nature of the charge. (*People v. Krantz* (1974), 58 Ill. 2d 187, 192, 317 N.E.2d 559, 562.) Rule 402(a)(1) does not require the court to advise the defendant of the elements of the offense. Rather, there is compliance if an ordinary person in the circumstances of the defendant would understand what the charges are. (*People v. Robinson* (1976), 63 Ill. 2d 141, 145-46, 345 N.E.2d 465, 467.) Where, as here, the defendant is informed of the name of the charge and

the prosecutor summarizes in court what the evidence would prove, the rule has been substantially complied with. (*People v. Krantz* (1974), 58 Ill. 2d 187, 193, 317 N.E.2d 559, 563.) Furthermore, a guilty plea is not rendered involuntary by the failure to inform the defendant expressly that the charged offense requires proof of specific intent. *People v. Cosey* (1978), 66 Ill. App. 3d 670, 672-75, 384 N.E.2d 95, 97-99.

■■ Defendant also contends that the court erroneously failed to advise him of lesser included offenses. Specifically, he complains that he was not advised of the possibility that he could be convicted of a lesser degree of homicide. However, a trial court is not required to inform the defendant of possible lesser included offenses or to inquire into the mental state of a defendant charged with murder where the factual basis for the plea removes any question as to mental state. *People v. Johnson* (1978), 66 Ill. App. 3d 84, 92, 383 N.E.2d 648, 654-55.

In this case, there can be no doubt that defendant understood the nature of the murder charge, and that he had the requisite mental state for murder. The trial court substantially complied with Rule 402(a)(1). The defendant himself admitted that his counsel discussed the possibility of manslaughter with him at some length. Furthermore, the factual basis for the plea revealed several witnesses who heard defendant express his intent to kill his wife at the time he shot her. Defendant agreed that the factual basis was substantially correct, and his own statement reaffirmed that he had the requisite intent to kill. Therefore, no reversal can be predicated on the basis of the nature of the charge, or the possibility of lesser included offenses.

■■ Defendant also complains that he was not advised of his right to persist in the plea of not guilty. However, where the entire record shows that defendant knowingly waived the constitutional rights associated with trial, failure to admonish him expressly that he can persist in a plea of not guilty is not error. (*People v. McCoy* (1979), 74 Ill. 2d 398, 402-03, 385 N.E.2d 696, 698-99; *People v. James* (1977), 51 Ill. App. 3d 541, 544, 366 N.E.2d 1082, 1085.) In this case, there is no question that defendant knew he did not have to plead guilty. The plea hearing was held at defendant's request. Defense counsel repeatedly told the defendant that the guilty plea was against his advice, and reasserted that fact in open court. Defendant voluntarily waived his trial rights. In such circumstances, failure to advise him specifically that he could persist in a not guilty plea was not error.

■■ Finally, defendant has presented insufficient evidence to establish that his guilty plea was rendered involuntary and unknowing by his limited mental capacity or emotionally disturbed state. He received a complete fitness examination and hearing, with the result that he was found able to understand the charges against him and to assist counsel in his defense.

Moreover, emotional upset and family pressure did not render the plea involuntary, where he was thoroughly admonished and understood the rights he was waiving, yet persisted in his plea. Accordingly, no reversible error arose from defendant's direct appeal.

While we affirm defendant's conviction in his direct appeal, we must remand the case for further post-conviction proceedings. The defendant's *pro se* post-conviction petition contended that his fourteenth amendment rights had been violated in that, when he pleaded guilty, he was disturbed emotionally, had been deprived of medication, and had been coerced into pleading guilty by the jail chaplain. No affidavits, records, or other evidence required by the Post-Conviction Hearing Act (Ill. Rev. Stat. 1977, ch. 38, par. 122—2) were attached to the petition. In addition, defendant's counsel did not file an amended petition, nor a certificate regarding his representation, as required by Supreme Court Rule 651(c) (Ill. Rev. Stat. 1977, ch. 110A, par. 651(c)).

Supreme Court Rule 651(c) mandates that the record in a post-conviction proceeding contain a showing that the petitioner's attorney consulted with petitioner, examined the record of the trial proceedings, and made any amendments to the *pro se* petition necessary for adequate presentation of the petitioner's contentions. This requirement can be met by a certificate of compliance, or can be established from the record itself. *People v. Drew* (1976), 36 Ill. App. 3d 807, 809, 345 N.E.2d 45, 47. ▪▪ The record in the case at bar reveals that defendant's post-conviction counsel had some familiarity with the case apart from the contentions of defendant's *pro se* petition. However, the attorney did not file an amended petition, and there is no other showing that he examined the record of the trial proceedings, nor that he discussed defendant's contentions with him. We cannot presume those matters absent an affirmative showing by the record. (*People v. Seidler* (1974), 18 Ill. App. 3d 705, 708, 310 N.E.2d 421, 424), and accordingly, defendant was not adequately represented on his post-conviction petition.

For the foregoing reasons we reverse the order of the Circuit Court of Saline County dismissing the post-conviction petition, and the cause is remanded with directions that an attorney be appointed to represent the defendant in the post-conviction proceeding.

Affirmed in part, reversed in part and remanded with directions.

KASSERMAN and HARRISON, JJ., concur.