**Ivie CLAY, Petitioner,**

v.

**DIRECTOR, JUVENILE DIVISION, ILLINOIS DEPARTMENT OF CORRECTIONS, Respondent.**

**No. 79 C 1491.**

United States District Court, N.D. Illinois, E.D.

Sept. 13, 1983.

John Elson, Northwestern University Legal Clinic, Chicago, Ill., for petitioner.

Neil F. Hartigan, Atty. Gen. of Ill., Terence M. Madsen, Asst. Atty. Gen., Chicago, Ill., for respondent.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Ivie Clay ("Clay") filed a habeas corpus petition against the Director of the Juvenile Division ("Director") of the State of Illinois Department of Corrections ("Department"), advancing several grounds for relief:

    1. Her guilty plea was involuntary because she (a) was ignorant of available defenses and (b) misunderstood the terms of her plea agreement.

    2. She received inadequate representation from Assistant Public Defenders Roger Harris ("Harris") and Saul Friedman ("Friedman") both when she pleaded guilty and in connection with her motion to vacate the guilty plea.

    3. Denial of the motion to vacate deprived Clay of due process because she was unconditionally entitled, according to the trial court's own representations, to

withdraw her plea if her sentence did not accord with the plea agreement.

On May 11, 1983 this Court granted Director's motion for summary judgment (564 F.Supp. 206, the "Opinion"). Clay now moves for reconsideration of that ruling pursuant to Fed.R.Civ.P. ("Rule") 59(e). For the reasons stated in this memorandum opinion and order, Clay's motion is denied.

### Facts[1]

In August 1977 Clay (then 15 years old) was arrested for aggravated assault and charged with delinquency. Because of Clay's indigency, Friedman was appointed as her counsel. Friedman urged her to enter into a plea agreement and plead guilty, failing to apprise her of the availability of certain legal defenses to the charge against her. Clay followed his recommendation on the mistaken understanding her plea agreement foreclosed any possibility of actual commitment.

On September 28, 1977 Clay admitted her guilt before Cook County Circuit Court Judge Rogers. After Clay acknowledged her guilty plea had been induced by a plea agreement, Judge Rogers advised her of her unconditional right to withdraw the admission if he refused to accept the agreement. On October 26, 1977 Judge Rogers found Clay guilty of delinquency and committed her to Department. Even though that sentence represented a rejection of Clay's version of the plea agreement, Friedman neither moved to withdraw her admission nor informed her of her right to do so.

Convinced Friedman had bungled the case, Clay's mother immediately telephoned Assistant Director John Elson ("Elson") of the Northwestern University Legal Clinic (the "Clinic")—Clay's counsel in this habeas proceeding—for help. Elson called Friedman the next day, apprising him of Mrs. Clay's belief her daughter has been misinformed that her admission of guilt could not lead to commitment. Friedman apparently agreed with that assessment and said

[1] This brief factual recitation plagiarizes freely from the considerably more detailed account presented in the Opinion.

he would file a motion to vacate her guilty plea.

On November 22 (within the prescribed 30 day period) Friedman filed the motion to vacate, using a standard printed form with blanks for the name of the "respondent" (in this case Clay). Needless to say, the form was seriously deficient as a presentation of Clay's specific basis for relief. It merely advanced very generalized grounds for vacating the plea, none of which really encompassed Clay's present habeas claims. On February 24, 1978 Judge Rogers held a hearing on the motion to vacate. Instead of arguing the motion himself, Friedman arranged for Harris, another Assistant Public Defender, to attend the hearing. Because Harris was totally unfamiliar with the case, he declined to present any argument in support of the motion. Not surprisingly, Judge Rogers denied the motion.

Though not then aware of the February 24 hearing and its outcome, Elson learned in early March that no progress had been made in the Clay matter. Consequently Elson changed his earlier position declining direct representation of Clay. On March 10 he filed (1) a petition to substitute himself and a Northwestern law student for the Public Defender's Office as Clay's counsel and (2) an amended motion to vacate the guilty plea. On March 16 Elson entered an appearance in the case. Shortly thereafter Elson appeared before Judge White to argue the amended motion. Judge White reset the motion for April 28 before Judge Rogers, who was then on vacation. On March 26 the 30-day period for an appeal from the denial of the original motion to vacate lapsed.

At the April 28 hearing Judge Rogers refused to entertain the motion, primarily on grounds of untimeliness: It was not filed within 30 days of the October 26 order of commitment. Believing the state procedural rule invoked by Judge Rogers foreclosed any other state remedies, Elson filed this habeas petition on Clay's behalf.

### The Opinion

In granting Director's summary judgment motion, the Opinion concluded the "waiver" principles of *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1976) barred consideration of Clay's habeas claims. That conclusion hinged on the affirmative resolution of two questions:

1. Was Clay free, on direct appeal from denial of the *original* motion to vacate, to assert the claims now advanced in this habeas proceeding—even though they had not been presented to the trial court in that original motion?

2. If so, did Clay forfeit her federal habeas remedy under the *Wainwright* cause-prejudice test by failing to take such a direct appeal?

As for the first question, the Opinion (564 F.Supp. at 211) found Illinois case law would have permitted appellate review of all three habeas claims:

1. Because Friedman's post-trial motion would not have been expected to impugn his own competency at Clay's initial admission-of-guilt hearing, that claim could have been pursued for the first time on appeal. *People v. Harrawood,* 66 Ill.App.3d 163, 167 [22 Ill.Dec. 899, 901], 383 N.E.2d 707, 709 (5th Dist.1978); *People v. Pendleton,* 52 Ill.App.3d 241, 244–45 [9 Ill.Dec. 762, 765], 367 N.E.2d 196, 199 (1st Dist.1977).

2. That same analysis would permit assertion of the other two habeas claims on appeal. They too could be said to have been omitted from the motion to vacate as a result of the incompetence of Clay's appointed counsel and thus "would not normally be expected to be included in a post trial motion." *Harrawood,* 66 Ill.App.3d at 167 [22 Ill.Dec. at 901], 383 N.E.2d at 709. *Accord, People v. Rhodes,* 71 Ill.App.2d 150, 151, 217 N.E.2d 123, 124 (4th Dist.1966) (counsel's failure to object to admissibility of evidence did not waive issue because that failure was allegedly caused by his incompetence).

In a footnote to that second point, the Opinion (564 F.Supp. at 211 n. 16) observed:

Nor would disposition of those two claims on appeal have breached the general rule against entertaining non-record matters.

Both claims draw on the same factual matrix that bounds the ineffective assistance claim, resolution of which generally requires supplementation of the record. Consequently the "plain error" doctrine would permit an appellate court to view any new evidence introduced in support of the incompetent counsel claim as probative of the other two claims as well. *See People v. Baynes,* 88 Ill.2d 225, 231 [58 Ill.Dec. 819, 821–23], 430 N.E.2d 1070, 1072–73 (1981) (plain error doctrine stays application of waiver rule where record discloses error affecting defendant's substantial rights).

As for the second question, the Opinion concluded Clay had not satisfied the "cause" branch of *Wainwright*'s cause-prejudice standard. This Court reasoned (564 F.Supp. at 213) current waiver doctrine (as reflected in *Engle v. Isaac,* 456 U.S. 107, 130–31, 102 S.Ct. 1558, 1572–73, 71 L.Ed.2d 783 (1982) and *United States ex rel. Spurlark v. Wolff,* 699 F.2d 354, 357–61 (7th Cir.1983)) categorically rejects the only proffered justification for Clay's failure to appeal—the futility of convincing the Illinois Appellate Court to uphold her habeas claims.

*Motion for Reconsideration*

Clay's current motion advances two arguments:

1. Elson's decision to file an amended motion to vacate rather than appeal the denial of the original motion to vacate reflected ineffective assistance of counsel. Such incompetence supplies the requisite "cause" for Clay's procedural default under the *Wainwright* formulation.

2. This Court erroneously found (564 F.Supp. at 211 & n. 16) the Illinois Appellate Courts would have entertained any non-record evidentiary support for the three habeas claims, because (a) a proceeding under the Post-Conviction Proceeding Act ("Post-Conviction" proceeding), Ill.Rev.Stat. ch. 38, § 122–1 to 122–7, rather than a direct appeal, is the only forum for raising such non-record matters and (b) juveniles like Clay cannot seek post-conviction relief.

Either of those contentions would, if successful, undercut the Opinion.

■ Clay's first argument essentially represents a new legal theory based on "new" evidence actually available and known to Clay when Director originally filed his summary judgment motion. Well aware the reason for her failure to appeal was a critical issue raised by that motion, Clay (through her counsel, Elson) deliberately chose to proffer the futility rationale as the sole justification for her procedural default. For the reasons set forth in *Keene Corp. v. International Fidelity Insurance Co.,* 561 F.Supp. 656, 665 (N.D.Ill.1982), this Court will not permit Clay to inject her new argument into the litigation at this late date by way of Rule 59:

> Motions for reconsideration serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence. *See Evans, Inc. v. Tiffany & Co.,* 416 F.Supp. 224, 244 (N.D.Ill.1976). Such motions cannot in any case be employed as a vehicle to introduce new evidence that could have been adduced during pendency of the summary judgment motion. *See Walker v. Hoffman,* 583 F.2d 1073, 1075 (9th Cir.1978), quoting *Donnelly v. Guion,* 467 F.2d 290, 293 (2d Cir.1972): The non-movant has an affirmative duty to come forward to meet a properly supported motion for summary judgment:
>
>> A party opposing a motion for summary judgment simply cannot make a secret of his evidence until the trial, for in doing so he risks the possibility that there will be no trial. A summary judgment motion is intended to "smoke out" the facts so that the judge can decide if anything remains to be tried.
>
> *Accord W.A. Krueger Co. v. Northern Trust Co.,* No. 81 C 6064, slip op. at 7 n. 7 (N.D.Ill. Jan. 7, 1983) ("a litigant cannot 'hold back' evidence on a summary judgment motion"). Nor should a motion for reconsideration serve as the occasion to tender new legal theories for the first time. *Evans,* 416 F.Supp. at 244.

Clay's second argument is flawed at two levels:

■ 1. By taking a direct appeal, Clay could have secured review of the full evidentiary basis (including non-record evidence) for her habeas claims—at least by the trial court on remand. Under Illinois Supreme Court Rule 604(d) ("Rule 604(d)"), Ill.Rev.Stat. ch. 110A, § 604, a juvenile defendant (like an adult) may challenge the voluntariness of his or her guilty plea on direct appeal if he or she filed (as Clay did) a motion to vacate the plea within 30 days of the sentencing date. See *In re Buchanan,* 62 Ill.App.3d 463, 465–66, 19 Ill.Dec. 607, 609, 379 N.E.2d 122, 124 (1st Dist.1978). Rule 604(d) generally bars appellate review of any issue not raised in the motion to vacate. But that waiver rule is inapplicable where, as Clay asserts here, the omission of issues resulted from the incompetence of defendant's counsel. See *People v. Porter,* 61 Ill.App.3d 941, 946, 19 Ill.Dec. 173, 176, 378 N.E.2d 788, 791 (4th Dist.1978). Under such circumstances the Illinois Appellate Court would either (a) rule on those claims itself if their resolution does not require further factual development (see, e.g., *Porter,* 61 Ill.App.3d at 946, 19 Ill.Dec. at 176, 378 N.E.2d at 791) or (b) as would have occurred in Clay's situation, remand for a rehearing (at which new evidence could be introduced) on the motion to vacate (see, e.g., *People v. Norris,* 46 Ill.App.3d 536, 542, 5 Ill.Dec. 105, 110, 361 N.E.2d 105, 110 (1st Dist.1977) (reversing denial of motion to vacate because defendant received inadequate representation and allowing trial court to hold evidentiary hearing if warranted by the motion's allegations)).[2]

2. Even were it assumed arguendo (despite the compelling authority just cited) a direct appeal would not have afforded the opportunity to supplement the record (either directly on appeal or indirectly on remand), Clay could have presented the non-record evidentiary foundation for her habeas claims by filing a petition for relief from judgment under Ill.Rev.Stat. ch. 110, § 2–1401 ("Section 2–1401," formerly Ill.Rev. Stat. ch. 110, § 72). That method of collateral attack is distinct from a post-conviction proceeding (see, e.g., *People v. Yarbar,* 43 Ill.App.3d 668, 670, 2 Ill.Dec. 189, 191–92, 357 N.E.2d 166, 168–69 (1st Dist.1976)), and, unlike the latter remedy, is available to juveniles such as Clay (see *Joseph A. Thorsen Realtors v. Werner,* 28 Ill.App.3d 670, 329 N.E.2d 365 (1st Dist.1975)). Section 2–1401 is specifically designed to permit judicial review of claims based on extra-record "facts which, had they been known at the time judgment was rendered, would have prevented its rendition." *People v. Hilliard,* 65 Ill.App.3d 642, 645, 22 Ill.Dec. 121, 124, 382 N.E.2d 441, 444 (1st Dist.1978). And the Illinois Appellate Court whose decisions have greatest force for this Court has recognized the availability of Section 2–1401 relief on the basis of allegations remarkably similar to Clay's habeas claims: In response to a Section 72 petition asserting defendant's guilty plea was induced by

---

2. Clay relies solely on *People v. Morris,* 3 Ill.2d 437, 445–46, 121 N.E.2d 810, 815–16 (1954) (citations omitted) to establish the futility of appeal as a means to obtain review of the non-record underpinnings of her habeas claims:

It is to be noted that in reviewing a case on writ of error the court does not consider facts outside the trial court's record; hence, in many of the Illinois cases cited above the matter of the competency of counsel has been treated rather summarily, there being nothing in the record to show the alleged incompetency or any prejudice resulting therefrom.... In a proceeding under the Post-Conviction Hearing Act, however, the court may receive proof by affidavits, depositions, oral testimony or other evidence which relates to an alleged deprivation of a constitutional right.

But that passage does not undercut this opinion's analysis:

1. That 30-year-old decision hardly provides as accurate a portrayal of current appellate practice as the very recent authority cited in the text.

2. *Morris* concerned the scope of review in criminal cases that actually went to trial and hence has little bearing on appellate treatment of claims raised by defendants who pleaded guilty—a specialized area governed by Rule 604(d), which was adopted long after *Morris* was decided.

3. Most importantly, *Morris* does not deny the appellate court's willingness and authority to remand criminal cases to the trial court for a full evidentiary hearing on claims based on non-record facts.

a mistaken understanding as to the terms of the plea agreement, *People v. Martinez,* 14 Ill.App.3d 775, 303 N.E.2d 442 (1st Dist. 1973) remanded the case for an evidentiary hearing because "justice would best be served" by such a reopened hearing. In the present case Clay, having failed to file a Section 2–1401 motion within the prescribed period (between 30 days and two years after the entry of judgment), waived that state remedy. Because no "cause" in *Wainwright* terms has been demonstrated, that procedural default disqualifies Clay from seeking federal habeas relief.[3]

### *Conclusion*

Clay's motion for reconsideration is denied.

---

3. Clay's original and amended motions to vacate were clearly brought under Rule 604(d), not Section 2–1401 as she now frivolously asserts:

1. As already noted, Rule 604(d) motions must be filed within 30 days after the sentence was imposed, while Section 2–1401 motions must be filed after that 30-day period. Because Clay's original motion to vacate was submitted within that 30-day period, it could not possibly have been brought under Section 2–1401.

2. Nor did Clay intend to ground the amended motion to vacate on Section 2–1401. As will be recalled, Judge Rogers dismissed that amended motion because it was not filed within 30 days of Clay's commitment—that time period prescribed for Rule 604(d) motions. Had the motion been brought under Section 2–1401, that ground for dismissal would have been plainly inapplicable. Consequently, the failure of Clay's counsel to point that out to Judge Rogers confirms Section 2–1401 was never intended as the predicate for the amended motion.