Bauer, Circuit Judge, filed specially concurring opinion.

**Ivie CLAY, a minor, Petitioner-Appellant,**

**v.**

**DIRECTOR, JUVENILE DIVISION, DEPARTMENT OF CORRECTIONS, Respondent-Appellee.**

**No. 83–2950.**

United States Court of Appeals, Seventh Circuit.

Argued June 7, 1984.

Decided Nov. 16, 1984.

Rehearing and Rehearing En Banc Denied Dec. 18, 1984.

classes of claims, except Prudential, have af-    firmatively accepted MHA's plan.

John S. Elson, Northwestern Univ. Legal Clinic, Chicago, Ill., for petitioner-appellant.

Terence M. Madsen, Asst. Atty. Gen., Chicago, Ill., for respondent-appellee.

Before BAUER and POSNER, Circuit Judges, and SWYGERT, Senior Circuit Judge.

SWYGERT, Senior Circuit Judge.

Ivie Clay appeals from the district court's grant of summary judgment for the Director of the Juvenile Division of the State of Illinois Department of Corrections and dismissal of her petition for a writ of habeas corpus, and the denial of her motion for summary judgment. For the reasons set forth below we reverse the grant of summary judgment.

## I

Clay, a juvenile, was arrested for aggravated assault after she waved a knife at Jose Garcia. According to Clay's undisputed version of events, Clay was standing by the window of her second floor apartment and saw Garcia climbing into the window of the vacant apartment below. Clay had previously seen Garcia try to set fire to her apartment by throwing gasoline and a lighted match on the rear porch. Clay asked Garcia why he was climbing in the window, and Garcia responded that he was going to retrieve his ball from the first floor apartment. Clay offered to retrieve the ball for Garcia, but Garcia persisted in entering the vacant apartment. Clay then went to the kitchen for a knife. From her apartment window, she waved the knife at Garcia who was still hanging onto the window ledge of the apartment below. Garcia then joined a group of boys outside the building who began throwing rocks at Clay and her apartment. Clay then called the police. The police came and arrested Clay after Garcia told them that Clay had a gun. Clay showed the police the knife she waved at Garcia and denied owning a gun. The police searched Clay's apartment and did not find a gun.

Friedman, a public defender, was appointed to represent Clay. Clay told Friedman of the events leading up to her arrest. Although these events might have supported certain legal defenses to the charge against Clay, Friedman did not apprise Clay of the availability of any defenses. Instead, he urged her to enter into a plea agreement. Unaware of any other option, Clay followed Friedman's recommendation to plead guilty with the understanding that she would receive no more than probation or supervision if she admitted guilt.

According to the affidavits of both Friedman and the assistant state's attorney, however, the only agreement was to amend the complaint to read that the weapon used was a knife rather than a gun. Because the amendment reflected the undisputed

facts, Clay derived no benefit from the agreement.[1]

On September 28, 1977 Clay pled guilty before Cook County Circuit Judge Rogers. After Clay acknowledged that her guilty plea had been induced by a plea agreement, Judge Rogers advised Clay that the court could "refuse to accept the agreement and enter any order which the Court considers proper including commitment to the Department of Corrections." The judge further advised Clay that she had an unconditional right to withdraw her admission if the court refused to accept the agreement. *In re Clay*, No. 77 J 8657, Report of Plea Proceedings in Juvenile Court at 6 (Cook County, Ill.Cir.Ct. Sept. 28, 1977). On October 26, 1977 Judge Rogers found Clay guilty of delinquency and committed her to the Illinois Department of Corrections. *Id.*, Report of Dispositional Proceedings in Juvenile Court (Oct. 26, 1977). Although the sentence represented a rejection of Clay's understanding of the plea bargain, Friedman neither moved to withdraw Clay's admission nor informed Clay of her right to do so.

Immediately after the dispositional hearing, Clay's mother telephoned Assistant Director John Elson of the Northwestern University Legal Clinic and asked for assistance. Mrs. Clay told Elson that her daughter had been promised probation in return for her guilty plea and that Friedman "had sold [Clay] down the river." Elson declined representation but called Friedman to inform him of Mrs. Clay's belief that her daughter had been misinformed. Friedman acknowledged to Elson that "there was a real problem with what Ivie Clay understood." Friedman assured Elson that he would file a motion to vacate Clay's plea and that he thought there would not be "a big problem with the matter."

In November 1977 Friedman filed a standard form motion to vacate which contained no specific factual allegations and no mention of Clay's understanding of the plea agreement. The federal district court found the motion "seriously deficient as a presentation of Clay's specific basis for relief." *Clay v. Director,* 564 F.Supp. 206, 208 (N.D.Ill.1983). At the hearing on the motion to vacate, Clay was represented by another public defender who was unfamiliar with the case and who presented no argument. Neither Clay nor her mother was informed about the motion or the hearing. Judge Rogers summarily denied the motion on February 24, 1978. Report of Proceedings on Motion to Vacate in Juvenile Court (Cook County, Ill.Cir.Ct. Feb. 24, 1978).

In March 1978 Elson learned that nothing had happened on the Clay matter and changed his earlier position declining direct representation of Clay. On March 10, 1978 Elson filed a petition to substitute himself for the Public Defender's Office as Clay's counsel and an amended motion to vacate judgment. On March 16, Elson entered an appearance in the case. The amended motion did not assert ineffective assistance of the public defenders representing Clay "apparently because Elson had not yet seen the original motion to vacate or learned of the manner in which it had been presented at the February 24 hearing. Elson learned of those developments when he appeared before Judge White to argue the amended motion." *Clay v. Director, supra,* 564 F.Supp. at 210. The hearing before Judge White occurred on March 16, 1978. At that time, Judge White ordered a transcript of the plea proceedings prepared at State expense and reset the motion for April 28, 1978 before Judge Rogers. Report of Proceedings on Amended Motion to Vacate

---

**1.** When first presented with respondent's version of the plea agreement, this court stated:
Common sense dictates that any defendant, and particularly one with seemingly valid defenses available, would scarcely be inclined to enter an admission of guilt in return for an agreement by the State to do nothing more than amend the complaint to comport with the undisputed facts of the case, particularly a fact of no significance on the matter of guilt of aggravated assault.
*Clay v. Director,* 631 F.2d 516, 521 (7th Cir. 1980).

before Judge White (Cook County, Ill. Cir.Ct. March 16, 1978).

At the April 28, hearing Elson urged ineffective assistance of counsel as a basis for considering the amended motion and vacating Clay's delinquency conviction. Judge Rogers ruled that the amended motion was untimely because more than thirty days had lapsed since the order of commitment, *see* Ill.Rev.Stat. ch. 110A, § 604(d), and because res judicata principles precluded relitigation of claims that could have been raised in the first motion to vacate. Report of Proceedings on Amended Motion to Vacate in Juvenile Court (Cook County, Ill.Cir.Ct. April 28, 1978).

On April 16, 1979 Elson filed a federal habeas petition on behalf of Clay in the United States District Court for the Northern District of Illinois. The court dismissed the petition on respondent's summary judgment motion. *Clay v. Director*, No. 79 C 1491, Memorandum Opinion and Order (N.D.Ill. Oct. 18, 1979). This court reversed and remanded, finding *inter alia* (1) that Clay had not waived her constitutional claims by failing to appeal her conviction to the Illinois Appellate Court because there was no basis in the record on which the appellate court could have reversed, and (2) that Clay's failure to appeal was not fatal to her habeas claims because she did not deliberately bypass state procedures. *Clay v. Director, supra*, 631 F.2d at 523.

On remand the district court found that this court's opinion was not the law of the case because intervening changes in the law altered the standards for waiver. The court, applying the standards set forth in *Engle v. Isaac*, 456 U.S. 107, 128–35, 102 S.Ct. 1558, 1572–75, 71 L.Ed.2d 783 (1982), and *United States ex rel. Spurlark v. Wolff*, 699 F.2d 354, 357–61 (7th Cir.1983) (en banc), held that Clay had waived her constitutional claims by failing to present them to the Illinois Appellate Court and that Clay had no cause for her waiver. *Clay v. Director, supra*, 564 F.Supp. at 210–13. On a motion for reconsideration, the district court rejected Elson's argument that Elson's ineffectiveness was cause for

Clay's failure to appeal her delinquency conviction. The court found that "Clay (through her counsel, Elson) deliberately chose to proffer the futility rationale as the sole justification for her procedural default" and refused to permit injection of this "new argument into the litigation at this late date." *Clay v. Director*, 570 F.Supp. 1322, 1325 (N.D.Ill.1983).

## II

■ We agree with the district court that under current standards Clay must be deemed to have waived her claims by failing to present them to the Illinois Appellate Court. We find, however, that Elson's ineffectiveness is the cause for Clay's procedural default; therefore, habeas corpus relief is not barred.

In *United States ex rel. Spurlark v. Wolff, supra*, 699 F.2d at 357–61, a majority of this court held that failure to raise a claim on direct appeal from a state court conviction bars federal habeas corpus relief unless the petitioner shows cause for and prejudice from the procedural default. We find no persuasive reason for distinguishing between a failure to take an appeal and a failure to raise an issue on appeal. *Cf. United States v. Correa-De Jesus*, 708 F.2d 1283, 1285 (7th Cir.) (assuming that *Spurlark* applies to case involving a complete failure to appeal), *cert. denied*, —— U.S. ——, 104 S.Ct. 530, 78 L.Ed.2d 712 (1983). *But see Crick v. Smith*, 650 F.2d 860, 867–68 (6th Cir.1981), *cert. denied*, 455 U.S. 922, 102 S.Ct. 1281, 71 L.Ed.2d 464 (1982); *Boyer v. Patton*, 579 F.2d 284, 286 (3d Cir.1978). *See generally Holcomb v. Murphy*, 701 F.2d 1307, 1310–12 (10th Cir.), *cert. denied*, —— U.S. ——, 103 S.Ct. 3546, 77 L.Ed.2d 1394 (1983).

Assuming that Clay is therefore required to show "cause" for failing to appeal her claims and actual "prejudice" under *Wainwright v. Sykes*, 433 U.S. 72, 87, 97 S.Ct. 2497, 2506, 53 L.Ed.2d 594 (1977), *cf. infra* at 433–434, we find these requirements satisfied. Ineffective assistance of counsel may provide sufficient cause for a procedural default. *See Alston v. Garrison*, 720

F.2d 812, 816 (4th Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 3589, 82 L.Ed.2d 886 (1984); *Gray v. Greer,* 707 F.2d 965, 969 n. 5 (7th Cir.1983); *Norris v. United States,* 687 F.2d 899, 903 (7th Cir.1982) (dicta); *Sincox v. United States,* 571 F.2d 876, 879–80 (5th Cir.1978). *But cf. Mitchell v. Hopper,* 538 F.Supp. 77, 96 (S.D.Ga.1982) ("an allegation of ineffective assistance of counsel does not alone suffice to demonstrate 'cause' under *Sykes"*), *vacated sub nom. Spencer v. Zant,* 715 F.2d 1562 (11th Cir.1983), *rehearing en banc granted,* 729 F.2d 1293 (11th Cir.1984). Failure by an attorney to perfect an appeal where the client has indicated a desire to appeal amounts to ineffective assistance of counsel. *See Hollis v. United States,* 687 F.2d 257, 259 (8th Cir.1982), *cert. denied,* 459 U.S. 1221, 103 S.Ct. 1228, 75 L.Ed.2d 462 (1983); *Mylar v. State,* 671 F.2d 1299, 1301 (11th Cir.1982) (failure to file appellate brief), *cert. denied,* —— U.S. ——, 103 S.Ct. 3570, 77 L.Ed.2d 1411 (1983); *Macon v. Lash,* 458 F.2d 942, 950 (7th Cir.1972).

■ Under Illinois law, to appeal from a judgment entered upon a plea of guilty, a defendant must first file in the trial court within thirty days from the date sentence is imposed a motion to withdraw the plea and to vacate the judgment. Ill.Rev.Stat. ch. 110A, § 604(d). The defendant has thirty days from the date of the entry of an order denying the motion to vacate to file a notice of appeal. *Id.* § 606(b). Illinois case law is clear that successive motions to vacate judgment do not toll the running of the appeal period. *See Deckard v. Joiner,* 44 Ill.2d 412, 418–19, 255 N.E.2d 900, 904, *cert. denied,* 400 U.S. 941, 91 S.Ct. 232, 27 L.Ed.2d 244 (1970); *Cronin v. Altman,* 101 Ill.App.3d 432, 434, 57 Ill.Dec. 36, 38, 428 N.E.2d 586, 588 (2d Dist.1981); *Slavick v. Michael Reese Hospital & Medical Center,* 92 Ill.App.3d 161, 165, 47 Ill.Dec. 747, 749, 415 N.E.2d 1060, 1062 (1st Dist.1981).

■ Clay's original motion to vacate was denied on February 24, 1978. Thus, she had until March 26, 1978 to file a notice of appeal. Elson substituted as counsel for Clay on March 10, 1978. Elson had sixteen days to file a notice of appeal on behalf of Clay. The pending status of the amended motion to vacate did not, as Clay suggests, render the denial of the original motion to vacate a nonfinal, nonappealable order. Rather, the filing of an appeal would have stripped the trial court of jurisdiction to decide Clay's amended motion to vacate. *See People v. Turner,* 111 Ill.App.3d 358, 368, 67 Ill.Dec. 43, 52, 443 N.E.2d 1167, 1176 (2d Dist.1982). The Illinois appellate courts will not dismiss an appeal based upon issues not raised in a motion to dismiss where the default is due to ineffective assistance of counsel. *Id.* But because there was only a minimal record of Clay's constitutional claims regarding her conviction, it is possible that the most she could obtain if she prevailed on appeal from the denial of her original motion to vacate was a remand to the trial court for an evidentiary hearing. *See People v. Nicewanner,* 93 Ill.App.3d 1, 5–6, 48 Ill.Dec. 503, 507, 416 N.E.2d 776, 780 (3d Dist.1981); *People v. Bennett,* 82 Ill.App.3d 596, 601, 38 Ill.Dec. 35, 40, 403 N.E.2d 50, 55 (5th Dist.1980). *But cf. People v. Turner, supra,* 111 Ill. App.3d at 368–70, 67 Ill.Dec. at 52, 443 N.E.2d at 1176 (addressing merits of defendant's claim that plea was involuntary although no motion to withdraw plea was made); *People v. Brownell,* 86 Ill.App.3d 697, 698, 41 Ill.Dec. 882, 883, 408 N.E.2d 304, 305 (2d Dist.1980) (same). Nevertheless, an appeal from the denial of a motion to vacate is the only route for relief provided under Illinois law. Thus, this was the route that Elson was required to follow to preserve Clay's right to appeal. Alternatively, Elson could have requested an expedited hearing on the amended motion to vacate so that in the event the motion was barred he would still have had time to file a notice of appeal from the denial of the original motion to vacate.

We believe that Elson's failure to preserve Clay's appeal "fell below an objective standard of reasonableness," *Strickland v. Washington,* —— U.S. ——, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984), constituting ineffective assistance of counsel and excus-

ing Clay's procedural default.[2] Elson's ineffectiveness clearly prejudiced Clay. We must presume that an Illinois appellate court would have responded to Clay's claims given the decisions by both this court and the district court finding that she presents allegations of serious constitutional violations, *see Clay v. Director, supra,* 631 F.2d at 519–23; No. 79 C 1491, Memorandum Opinion and Order at 2–5 (N.D.Ill. May 25, 1982). *Cf. People v. King,* 1 Ill.2d 496, 500, 116 N.E.2d 623, 625 (1954) (per curiam) (defendant entitled to withdraw plea where agreement was based on misapprehension of law or facts, defendant has defense worthy of consideration by factfinder, or ends of justice would be better served by submitting case to factfinder); *People v. Brownell, supra,* 86 Ill.App.3d at 700, 41 Ill.Dec. at 884, 408 N.E.2d at 306 (defendant permitted to withdraw plea where no evidence that defendant was advised of extended term statute or that sentences on multiple charges could be imposed consecutively); *People v. Petrovich,* 77 Ill.App.3d 737, 739, 33 Ill.Dec. 240, 241–42, 396 N.E.2d 629, 630–31 (2d Dist.1979) (defendant entitled to withdraw plea where defendant's statement raised valid and substantial defenses to crime charged); *People v. Brooks,* 54 Ill.App.3d 963, 966, 12 Ill.Dec. 339, 341, 369 N.E.2d 1353, 1355 (1st Dist. 1977) (merits of defendant's case heard on appeal where defendant's misapprehension of procedural prerequisites was attributable to trial court's ambiguous directions). If, as Clay argues, the record contained insufficient evidence to either support or refute Clay's claims, we must presume that the appellate court would have remanded for a hearing.[3]

### III

■ We cannot accept the district court's refusal to hear Clay's claim that Elson was ineffective. When waiver was first raised by respondents in their motion for summary judgment, Clay (through her attorney Elson) responded:

> [E]ven if this Court were to agree that Elson was at fault for not adequately pursuing Petitioner's ineffective assistance claim in State court, the appropriate remedy would not be the requested summary judgment. Rather, fairness to Petitioner would require that this Court appoint new counsel for her since Elson has not argued, and could not adequately argue, the possibility of his own past inadequate representation as a further basis for granting Petitioner relief.

Memorandum in Opposition to Respondents' Summary Judgment Motion on the Ground of Waiver filed March 31, 1983, at 3–4. Then, when the court indicated that waiver might present a bar to habeas relief for Clay, Elson had the following dialogue with the court:

> THE COURT: ... [A]t this point you are confronted with the cause prejudice problem that is posed by the *Wainwright* notion. ...
>
> MR. ELSON: ... I am troubled by one matter. Apparently your analysis is that

---

2. In a supplemental opinion, the district court held that Clay also waived her claims by failing to raise them in a so-called section 72 petition, Ill.Rev.Stat. ch. 110, § 2–1401. *Clay v. Director, supra,* 570 F.Supp. at 1326. We are persuaded by Clay's arguments that (1) this remedy was not available to her under the facts of her case, and (2) this is really a question of exhaustion of state remedies that should not bar relief since the remedy is no longer available to her, Brief of Petitioner-Appellant at 37–42. We need not decide the issue, however, because the cause for Clay's waiver, if waiver exists, is again the ineffectiveness of her counsel.

3. We are not unsympathetic to the Hobson's choice faced by Elson. If he had filed a notice of appeal on behalf of Clay, Clay would have lost any possibility of a hearing on the amended motion to vacate. And because Illinois law limits the postconviction remedies available to juveniles, it is not clear that Clay would have had another opportunity to present her claims to the trial court. By choosing to pursue a hearing in the trial court (which was possibly the only court in which Clay could obtain ultimate relief), Elson caused Clay to lose her right to appeal. Although we conclude that Elson could not competently make a choice for Clay that caused her to forfeit her right to appeal, we commend his concerned, vigorous, and otherwise extremely effective representation of Clay (which included raising the issue of his own ineffectiveness).

Ivy [sic] Clay's failure to appeal the incompetence in a motion to vacate was—

THE COURT: At a time when you were plainly counsel and had time to do so.

MR. ELSON: Which implicates, and this is the point I raised in my memo, implicates my competence in choosing not to appeal.

THE COURT: That may be for a third lawyer to argue, but I can't really deal with that one at this state. ...

MR. ELSON: I guess all I am saying is there are two sides to the coin, and if, indeed, it was a mistake to not appeal, then it was an incompetent mistake because it certainly wasn't Ivy [sic] Clay's fault. She was relying on her attorney.

\* \* \* \* \* \*

MR. ELSON: I just want to preserve the record on that. If as a result of your ruling it is found waivered [sic], then we would, I think, on behalf of the client, ask for appointment of another counsel.

THE COURT: You may want to do that. You are not doing anything on your record yet because I haven't ruled.

Transcript of Proceedings of April 15, 1983, at 3, 4, 6. We agree with Clay that by refusing to permit her to argue Elson's ineffectiveness before the court ruled because it was "premature" and after the court ruled it was "too late," the court erected an unfair procedural barrier. We therefore remand the case with instructions to permit new counsel to substitute for Elson.

**4.** Most courts that have addressed the issue have held that habeas petitioners are not necessarily required to establish a violation of their sixth amendment right to effective assistance of counsel to satisfy cause for a procedural default under *Wainwright v. Sykes, supra.* The courts generally have drawn a distinction between counsel's tactical decisions and ignorance or oversight. If the failure to object or appeal was a tactical decision by counsel, the petitioner is required to prove that counsel's representation violated the sixth amendment. If the failure was due to counsel's ignorance or oversight, a lesser showing of incompetency is required. *See Carrier v. Hutto,* 724 F.2d 396, 401 (4th Cir.1983); *Runnels v. Hess,* 653 F.2d 1359, 1364 (10th Cir.1981); *Garrison v. McCarthy,* 653 F.2d 374, 378 (9th Cir.1981); *cf. Jurek v. Estelle,* 593

## IV

Even if we believed that Elson's decision to pursue a remedy for Clay in the trial court rather than to take an appeal was a strategic and reasonable choice,[4] *see Clay v. Director, supra,* 564 F.Supp. at 211 n. 17, we would feel constrained to hear Clay's constitutional claims to prevent a possible miscarriage of justice.

Although the Supreme Court has signaled a significant narrowing of the channels for habeas corpus relief, particularly in its adoption of the "cause and prejudice" requirements, the Court has continued to give assurance that the channels remain open to correct miscarriages of justice. In *Engle v. Isaac, supra,* 456 U.S. at 135, 102 S.Ct. at 1576, the Court stated: "In appropriate cases [the] principles [of cause and prejudice] must yield to the imperative of a fundamentally unjust incarceration." In *Wainwright v. Sykes, supra,* 433 U.S. at 91, 97 S.Ct. at 2508, the germinal case with respect to the cause and prejudice test, the Court admonished that "the [waiver] rule will not prevent a federal habeas court from adjudicating for the first time the federal constitutional claim of a defendant who in the absence of such an adjudication will be the victim of a miscarriage of justice." *See also Ortiz v. Duckworth,* 692 F.2d 39, 41–42 (7th Cir.1983).

In a concurrence in *Sykes,* Justice Stevens expounded on the need for flexibility in applying the cause and prejudice test:

F.2d 672, 683 n. 19 (5th Cir.1979) ("Of course, [attorney] misfeasance need not amount to a denial of the defendant's constitutional right to counsel; if it did it would be an independently sufficient reason to grant relief and would make it immaterial whether other constitutional claims had been forfeited."), *vacated on other grounds,* 623 F.2d 929 (5th Cir.1980), *cert. denied,* 450 U.S. 1001, 101 S.Ct. 1709, 68 L.Ed.2d 203 (1981).

We need not address the issue raised by those cases. We hold first that Elson's failure to appeal amounted to a sixth amendment violation. *See supra* at 431–432. We hold in the alternative that a less-than-usual showing of cause is required in the instant case because Clay has been severely prejudiced. *See infra* at 434.

[I]f the constitutional issue is sufficiently grave, even an express waiver by the defendant himself may sometimes be excused. Matters such as the competence of counsel, the procedural context in which the asserted waiver occurred, the character of the constitutional right at stake, and the overall fairness of the entire proceeding, may be more significant than the language of the test the Court purports to apply. I therefore believe the Court has wisely refrained from attempting to give precise content to its "cause"-and-"prejudice" exceptions ....

433 U.S. at 95–96, 97 S.Ct. at 2511 (footnotes omitted). Two circuits, relying primarily on Justice Stevens' concurrence in *Sykes,* have given "cause" a flexible definition that may change depending on the degree of prejudice shown. *See Ford v. Strickland,* 696 F.2d 804, 817 (11th Cir.), *cert. denied,* — U.S. —, 104 S.Ct. 201, 78 L.Ed.2d 176 (1983); *Huffman v. Wainwright,* 651 F.2d 347, 351 (5th Cir.1981); *Sincox v. United States, supra,* 571 F.2d at 879–80. These courts "view cause in terms of the nature of the procedural waiver and with an eye to the possible resulting prejudice." *Huffman v. Wainwright, supra,* 651 F.2d at 351. Cause is defined in sufficient terms "to excuse a procedural default in light of the determination to avoid 'a miscarriage of justice.'" *Id.* Thus, if prejudice is high, cause will be more easily found. Conversely, where it appears that justice has been done, the requirement for showing both cause and prejudice will be strictly enforced. *See generally United States ex rel. Spataro v. Bosse,* No. 82 C 5547, Memorandum and Order at 5 n. 1 (N.D.Ill. Jan 10, 1984); Goodman & Sallett, *Wainwright v. Sykes: The Lower Federal Courts Respond,* 30 Hast.L.Rev. 1683, 1722 (1979).

■ We adopt the approach of those circuits in the instant case. We are presented with a combination of all the "matters" listed by Justice Stevens in his concurrence. First, the public defender was both unconcerned with Clay's case and incompetent. Elson, although concerned and vigorous in his representation, also failed Clay.

Second, as Clay points out, Illinois law limited the routes for relief available to her. For example, collateral remedies provided in the Illinois Post-Conviction Hearing Act, Ill.Rev.Stat. ch. 38, ¶ 122–1 et seq., have been held unavailable to juveniles in most circumstances. *See In re A.W.H.,* 95 Ill. App.3d 1106, 1107, 51 Ill.Dec. 483, 484, 420 N.E.2d 1041, 1042 (5th Dist.1981); *In re R.R.,* 75 Ill.App.3d 494, 495–96, 31 Ill.Dec. 159, 160–61, 394 N.E.2d 75, 76–77 (2d Dist. 1979), *cert. denied,* 447 U.S. 928, 100 S.Ct. 3025, 65 L.Ed.2d 1122 (1980). Because there was little record of Clay's constitutional claims in the trial court, the most Clay could have hoped for on appeal was a remand to the trial court. Importantly, Clay was not neglecting to present her claims to the Illinois courts. Rather, she was trying to present her claims to the only court that could ultimately grant her relief. Finally, the constitutional rights at stake in this case are of fundamental importance. *See Clay v. Director,* 631 F.2d at 518–19, 523. *See generally Boykin v. Alabama,* 395 U.S. 238, 242–44, 89 S.Ct. 1709, 1711–12, 23 L.Ed.2d 274 (1969) ("a waiver that takes place when a plea of guilty is entered in a state criminal trial ... [involves] three important federal rights"). The procedural context, the incompetence of counsel, Clay's youth, and the nature of her claims combine to present a picture of overall unfairness. To prevent a miscarriage of justice, we hold that Elson's failure to take an appeal was, if nothing else, sufficient cause for Clay's procedural default.

POSNER, Circuit Judge, concurring.

I concur in the court's result, but not in the analysis that leads to it. The key to that analysis is the proposition that Ivie Clay's second lawyer, Elson, rendered ineffective assistance of counsel as a matter of law. This proposition is untenable on its own terms, and is also inconsistent with the rule announced in *United States ex rel. Spurlark v. Wolff,* 699 F.2d 354, 357–61 (7th Cir.1983) (en banc), that a state criminal defendant may not seek federal habeas corpus on grounds he could have raised, but failed to raise, in an appeal to a state court from his conviction.

Miss Clay pleaded guilty, almost certainly because she was incompetently represented by her first lawyer, Friedman—for she had excellent defenses, state and federal, to the charges against her. Under Illinois law, if she wanted to appeal her conviction, entered as it had been on the basis of a guilty plea, she had first to file with the trial court a motion to vacate the conviction. Friedman did file such a motion, but it was completely inadequate and was denied. It was at this point that Elson began actively representing Miss Clay. He faced a dilemma. If he appealed, he had little or no prospect of winning, because Friedman had failed to make a record substantiating the claim that the proceedings leading up to Miss Clay's conviction had been constitutionally infirm. As we said the last time this case was here (an unbelievable four years ago), "Given the general grounds in [Friedman's] motion, and the fact that no argument was presented in the trial court, there would have been no basis on which the appellate court could have reversed." 631 F.2d 516, 523 (7th Cir. 1980). The best ground for an appeal would have been Friedman's incompetent representation of Miss Clay (and if this could be shown, presumably she would be given an opportunity to repair the deficiencies in the record on her other constitutional claims); but of course Friedman had not used the motion to vacate to make the case for his own incompetence. Elson might still have been able to raise on appeal the issue of Friedman's incompetence, but without a record demonstrating it (the kind of record later made in this habeas corpus proceeding) he would not have had a decent chance of prevailing on the appeal even to the extent of getting an order for an evidentiary hearing on the issue. Elson's alternative to appealing was to file an amended motion to vacate. This was a long shot, because Illinois law makes no specific provision for such an animal; but Elson was greatly encouraged when Judge White set the matter for a hearing.

The scheduling of the amended motion for a hearing made Elson's dilemma exquisite. If he appealed from the denial of the first motion to vacate (as he still had time to do), then under Illinois law the trial court would lose jurisdiction and Elson would lose the hearing that seemed his best shot at getting his client's conviction overturned. But if he did not appeal, the time for appeal would lapse before the hearing on his amended motion was held. He decided not to appeal, and unfortunately for him and his client the judge before whom the hearing had been set (a different judge, Judge Rogers) decided that the amended motion was procedurally improper and dismissed it out of hand. It was now too late for Elson to file an appeal from the denial of Friedman's original motion to vacate the conviction; and taking an appeal from the denial of the amended motion was unpromising since the denial (even assuming it was an appealable order, which is unclear) had been based on a procedural ground unlikely to be overturned. It was against this complicated background that Elson decided to seek federal habeas corpus without having first attempted to raise on appeal to a state court the constitutional claims that he would be asking the federal court to decide.

I do not see how Elson's conduct in the state court can be called ineffective assistance of counsel as a matter of law. He acted reasonably in the unusual circumstances in which he found himself. Only after a judge had actually scheduled a hearing on the amended motion to vacate did Elson give up what we said in 1980 would have been a futile appeal. He cannot be faulted for not having anticipated that a different judge would cancel the hearing and throw out the motion as procedurally improper. If a judge offers a lawyer a hearing on a motion, not one lawyer in a hundred will pause to question the judge's authority to grant the motion should the hearing produce evidence showing that the motion is meritorious. It is true that Illinois law makes no specific provision for an amended motion to set aside a conviction, but Elson would not have been unreasonable in thinking that Illinois judges might have implicit authori-

ty to accept an amended motion, relating back to the date of filing of the original motion, in an appropriate case. Anyway, it was better than nothing. And there was no obvious way in which Elson could preserve both his (probably worthless) right to appeal and what seemed the much more promising option of a hearing on the amended motion to vacate the conviction. Of course with the benefit of hindsight we know he should have gone ahead and appealed, not because it would have gained him anything but because it would have complied formally with the requirement, imposed by *Spurlark*, of giving the state appellate court a chance to correct any constitutional error committed in the trial court. But the proper perspective in evaluating a claim of ineffective assistance of counsel is ex ante, not ex post. We should not make lawyers always go by the book, when an unconventional approach holds more promise for the client, as it did here. Legal imagination should not be penalized by a concept of ineffective assistance of counsel that discourages all risk-taking on a client's behalf.

Maybe with even more imagination Elson could have escaped from his dilemma. Maybe he should have moved to accelerate the hearing scheduled before Judge Rogers, or filed a late notice of appeal, or tried to appeal from Judge Rogers' order dismissing the amended motion without a hearing. But a lawyer is not ineffective just because he fails to make extraordinary efforts on his client's behalf; the constitutional standard is minimum rather than maximum compliance with the standards of the profession.

As Elson was not in fact incompetent in his efforts on behalf of Miss Clay, I am led to wonder whether my brethren may not regard *any* failure to appeal an appealable judgment (such as the order denying the original motion to vacate) as incompetence per se, no matter how reasonable it actually is in the circumstances. There are hints of this position in the majority opinion, but I hope I am misreading it, for automatically equating failing to appeal with failing to render effective assistance of counsel

would do great damage to our recent en banc decision in *Spurlark*. It is true that the precise issue there was the slightly different one of a defendant's failing to include in his state-court appeal grounds that he later tried to raise in a habeas corpus action in federal court. I assume my brethren would not think it incompetence per se for a lawyer who had taken an appeal for his client not to include every possibly meritorious ground in the appeal; the lawyer might have made a professionally sound judgment that his chances of winning would be greater if he limited his appeal to his best grounds. But nothing in *Spurlark* suggests that that decision should be limited to cases in which an appeal is filed but some grounds for appeal are omitted—quite the contrary, see 699 F.2d at 359–61. In any event the extension of *Spurlark* to the case where the lawyer fails to appeal at all—if extension it be— was taken in *Williams v. Duckworth*, 724 F.2d 1439, 1443 (7th Cir.1984); see also *United States v. Correa-De Jesus*, 708 F.2d 1283, 1285 (7th Cir.1983) (dictum). Contra, *Holcomb v. Murphy*, 701 F.2d 1307, 1310–12 (10th Cir.1983). *Williams* would be unfathomable if the court had thought that not appealing an appealable judgment is always and everywhere the infallible sign of lawyer incompetence. Then the defendant could always show good cause—the incompetence of his counsel—for failing to appeal his conviction to a state appellate court, and the failure to take such an appeal could never bar a defendant from seeking federal habeas corpus.

The idea that failure to appeal is ineffective assistance of counsel per se not only guts *Spurlark* as elaborated in *Williams*, but is wrong on its own terms. If an appeal would be futile, the failure to appeal is not a sign of incompetence. This is such a case. *Williams* gives another example: forgoing an appeal because of a recent and dispositive adverse precedent in the state supreme court. See 724 F.2d at 1443 n. 5.

Even though Elson acted reasonably throughout, Miss Clay has demonstrated good cause for not having pursued her state appellate remedies—which is why I concur in the majority's result. The combi-

nation of Friedman's incompetence with the inconsistent signals given by the two state judges made it impossible (or virtually so) for her to pursue her appellate remedies (remedies that in any event Friedman's incompetence made unlikely to succeed despite the great substantive merit of her constitutional claims) without giving up what seemed a better remedy in the trial court—a hearing on the amended motion to vacate. True, the mere fact that making an objection seems futile on the basis of existing state-court precedents does not in itself establish good cause for failing to make it, *Engle v. Isaac,* 456 U.S. 107, 130, 102 S.Ct. 1558, 1573, 71 L.Ed.2d 783 (1982), and I shall assume that the same principle applies to taking an appeal. But the principle has reference to cases where there is no great cost to making the objection or taking an appeal. If Elson had taken a futile appeal, he would have given up something worth more to his client: a hearing that a state judge had offered him, at which he would be able to present the evidence essential to show that his client had been wronged. As Elson has established good cause for failing to pursue state appellate remedies, and there is no doubt that denying Miss Clay access to federal habeas corpus would do her great prejudice, the judgment of the district court must be reversed and the case remanded for a consideration—at long last—of the merits of her constitutional claims. But there is no need for us to embrace the factually and legally unfounded proposition that a decision not to appeal an appealable judgment is conclusive proof of incompetence of counsel.

BAUER, Circuit Judge, specially concurring.

I do not share Judge Posner's fear that the majority opinion might be construed to mean that *any* failure to appeal an appealable judgment would be incompetence per se. Elson himself raised the question of his incompetence and asked that this issue be heard. It is only in the context of the very peculiar facts of this case that the failure to appeal was a final nail in the legal coffin of his client's case. Filing an amended motion to vacate when Illinois

makes "no specific provision for such an animal" and urging upon the court a hearing on that peculiar animal is not a substitute for filing an appeal when a relatively obvious miscarriage of justice has occurred. Imaginative pleadings, however commendable, do not add to the time for a proper appeal. The fact that one judge would have provided a vehicle for hearing the imaginative motion and another, successor judge, would not, does not make the failure to appeal more sound; it may provide a *reason* for the failure but scarcely an excuse. Imagination is simply not a substitute for sound legal judgment.

Finally, I would commend Elson for his frank statement that he made a mistake. To rely on a judge's agreement to hear and rule on a motion filed without any precedent or standing is not just a "long shot"—it is risk-taking at the expense of a client who had already suffered from legal advice that seemed to have failed to grasp the handle of legal reality. Elson may be more to be pitied than censured—he was undoubtedly doing his best to untangle a knotty problem not of his doing—but the opinion simply accepts what he himself has urged upon this court.